# POSTAL TELEGRAPH CABLE COMPANY *v.* ADAMS.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSISSIPPI.

No. 649. Submitted December 3, 1894. — Decided January 21, 1895.

While a State cannot exclude from its limits a corporation engaged in interstate or foreign commerce, or a corporation in the employment of the general government, by the imposition of unreasonable conditions, it may subject it to a property taxation incidentally affecting its occupation in the same way that business of individuals or other corporations is affected by common governmental burdens.

The tax imposed by the laws of Mississippi, (Code of 1880, c. 10, § 585; Sess. Laws 1888, c. 3,) when enforced against a telegraph company organized under the laws of another State, and engaged in interstate commerce in Mississippi, being graduated according to the amount and value of the company's property measured by miles, and being in lieu of taxes directly levied on the property, is a tax which it is within the power of the State to impose; and the exercise of that power, as expounded by the highest judicial tribunal of the State, does not amount to a regulation of interstate commerce, or put an unconstitutional restraint thereon.

By the revenue laws of Mississippi certain taxes were levied as privilege taxes on various corporations, such as express companies, telegraph companies, insurance companies, sleeping-car companies, banks of deposit or discount, gas companies, and the like; and on taverns, hotels, restaurants, brokers, auctioneers, pedlers, liquor sellers, dealers in malt liquors, and so on. Code Miss. 1880, c. 10, § 585 ; Sess. Laws Miss. 1888, 8, act of March 8, c. 3. The tax required to be paid by telegraph companies was $3000 on each telegraph company operating within the State one thousand miles or more of wire, and on each telegraph company operating less than one thousand miles of wire a tax of one dollar per mile, and the tax thus levied was "in lieu of other state, county, and municipal taxes." During the fiscal years 1890 and 1891 the Postal Telegraph Cable Company, a corporation chartered under the laws of New York, operated within the State of Mississippi three hundred and ninety-one and twenty-eight hundredths miles of wire. The telegraph lines, equipment, and property appertaining thereto, owned and operated by the company within the limits of eighteen counties of the State, were during these years worth and valued at the sum of $41,967.54. The tax levied on the company by the law of March 8, 1888, under the name of privilege tax, amounted annually to $391.28, or an aggregate for the two years of $782.56. Under the general revenue laws of the State the *ad valorem* tax on the property of the company for the two years would have been $1188.56 for state and county purposes only, not including what might have been assessed and collected by municipalities in the way of *ad valorem* taxes for municipal purposes. For the years 1890 and 1891 the company failed to pay its taxes, and Adams, the state revenue agent of the State of Mississippi, brought suit in the Circuit Court of Hinds County, August 16, 1892, against the company therefor. The first count of the declaration was for the privilege taxes and the second count for *ad valorem* taxes in the several counties which it was alleged had been duly levied for state and county purposes. The company demurred to the second count and pleaded specially to the first count in substance,

and so far as essential here, that it was a telegraph company duly incorporated and organized under the laws of the State of New York, and was on the 1st days of January, 1890, 1891, and 1892, respectively, engaged in and still continued, to carry on the business of a telegraph company, having offices in various cities and towns in the State of Mississippi, for the purpose of receiving and sending telegraphic messages and maintaining and operating certain lines of telegraph on the various post roads, public roads, and railroads extending over, across, leading into and from the State of Mississippi to the State of Alabama, and other points in other States of the United States and the Dominion of Canada. That it was also the lessee of the Atlantic Postal Telegraph Cable Company, a corporation duly organized under the laws of the State of New York, and by its charter authorized to construct and operate lines of telegraph in and between the various States of the Union, including the State of Mississippi. That as such lessee and owner it was engaged in the general public telegraph business of transmitting messages for commercial purposes by, along, and over its lines, within, from, through, and across the State of Mississippi, and many other States and Territories of the Union, and had offices for the receiving and sending of messages by telegraph in each and every State and Territory wherein the lines leased or owned by it extended, including the State of Mississippi. That on or about the 6th day of March, 1886, the company duly filed its written acceptance with the Postmaster-General of the United States of the restrictions and obligations of the act of Congress entitled " An act to aid in the construction of telegraph lines and to secure to the government the use of the same for postal, military, and other purposes," approved July 24, 1866, now Title 65 of the United States Revised Statutes, and that in pursuance thereof it had been designated by the Postmaster-General as one of the telegraph companies that must transmit messages for the United States at a price and rate to be fixed by the said Postmaster-General. That defendant was engaged as a governmental agent of the United States, at the times mentioned, in transmitting messages for

the government of the United States between its various offices, not only from points within the State of Mississippi to points without the State of Mississippi, but also for such government officers from points wholly within the State of Mississippi to other points also wholly within the State of Mississippi; and that all of the roads upon which the lines of said company were constructed were post roads of the United States.

Plaintiff demurred to the special pleas. The case came on to be heard upon these demurrers, and the Circuit Court sustained defendant's demurrer to the second count and plaintiff's demurrer to defendant's pleas to the first count, with leave to defendant to plead over. This, defendant declined to do, and judgment was thereupon entered against the company for the amount of the so-called privilege taxes for the years 1890 and 1891, with interest and costs. From this judgment an appeal was taken to the Supreme Court of Mississippi, and the judgment affirmed. The opinion of that court will be found reported in advance of the official series in 14 Southern Rep. 36. A writ of error was then allowed to this court.

*Mr. T. Moultrie Mordecai* and *Mr. Philip H. Gadsden* for plaintiff in error.

I. The tax sought to be collected from the Postal Telegraph Cable Company is a license tax for the privilege of exercising its franchises within the State of Mississippi.

The Supreme Court of the State, in the course of its opinion in this case, says: "It will be thus seen at once that this is a tax imposed upon a telegraph company in lieu of all others as a privilege tax."

II. Such a tax, imposed upon a foreign corporation, engaged in interstate commerce and in transmitting messages for the government of the United States, for the privilege of exercising its franchises within the State, is unconstitutional and void.

This court has decided in a large number of cases that no

State can place a restriction in any form upon interstate commerce, either upon the commerce itself, the business of doing interstate commerce, or the instruments and means employed to carry on such commerce. *Norfolk & Western Railroad* v. *Pennsylvania*, 136 U. S. 114; *Crutcher* v. *Kentucky*, 141 U. S. 47; *Lyng* v. *Michigan*, 135 U. S. 161; *Pensacola Tel. Co.* v. *Western Union Tel. Co.*, 96 U. S. 1; *Telegraph Co.* v. *Texas*, 105 U. S. 464; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196; *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489; *Fargo* v. *Michigan*, 121 U. S. 230.

In *Pickard* v. *Pullman Southern Car Co.*, 117 U. S. 34, 43, this court passed upon the identical question involved in the case at bar. The legislature of the State of Tennessee passed an act which imposed a privilege tax of fifty dollars per annum on every sleeping car or coach run over a railroad in Tennessee, and the court held such act unconstitutional so far as it applied to the interstate transportation of passengers carried over the railroads in Tennessee into or out of or across that State in sleeping cars owned by a corporation of Kentucky. The opinion of the court on this point is as follows: "The point upon which the final judgment was rendered in the case was the one considered and adjudged in the decision given on the demurrer to the declaration. The tax was not a property tax, because under the constitution of Tennessee, all property must be taxed according to its value, and this tax was not measured by value, but was an arbitrary charge. What was done by the plaintiff was taxed as a privilege, it being assumed by the state authorities, that the legislature had the power under the constitution of Tennessee to enact the 6th section of the act of 1877, and that the plaintiff had done what that section declared to be a privilege. By the decisions of the Supreme Court of Tennessee cited in the opinion of the Circuit Court on the demurrer, it is held, that the legislature may declare the right to carry on any business or occupation to be a privilege, to be purchased from the State on such conditions as the statute law may prescribe, and that it is illegal to carry on such business without complying with those conditions. In this case the payment of the tax imposed was a

condition prescribed, without complying with which, what was done by the plaintiff was made illegal.   The tax was imposed as a condition precedent to the right of the plaintiff to run and use the thirty-six sleeping cars owned by it, as it ran and used them on railroads in Tennessee.   The privilege tax is held by the Supreme Court of Tennessee to be a license tax, for the privilege of doing the thing for which the tax is imposed, it being unlawful to do the thing without paying the tax.   .   .   .   The tax was really one on the right of transit, though laid wholly on the owner of the car."

The decision in *Leloup* v. *Port of Mobile*, 127 U. S. 640, 644, 645, seems to be conclusive of the question under consideration.   The Western Union Telegraph Company, having an office in the city of Mobile, was required to pay a license tax under a city ordinance imposing such a tax "on all telegraph companies."   The court said: "In approaching the question thus presented it is proper to note that the license tax in question is purely a tax on the privilege of doing the business in which the telegraph company was engaged.   By the laws of Alabama in force at the time this tax was imposed, the telegraph company was required in addition to pay taxes to the State, county and port of Mobile, on its poles, wires, fixtures and other property at the same rate and to the same extent as other corporations and individuals were required to do.   .   .   .

"The question is squarely presented to us, therefore, whether a State, as a condition of doing business within its jurisdiction, may exact a license tax from a telegraph company, a large part of whose business is the transmission of messages from one State to another and between the United States and foreign countries, and which is invested with the powers and privileges conferred by the act of Congress, passed July 24, 1866, and other acts incorporated in Title 65 of the Revised Statutes?   Can a State prohibit such a company from doing a business within its jurisdiction, unless it will pay a tax and procure a license for the privilege?   If it can, it can exclude such companies, and prohibit the transaction of such business altogether.   We are not prepared to say that this can be done."

"Ordinary occupations are taxed in various ways, and in most cases legitimately taxed. But we fail to see how a State can tax a business occupation when it cannot tax the business itself. Of course, the exaction of a license tax as a condition of doing any particular business, is a tax on the occupation, and a tax on the occupation of doing business is surely a tax on the business."

This case has been often referred to with approval in subsequent opinions of the court. *Asher* v. *Texas*, 128 U. S. 129; *Western Union Tel. Co.* v. *Alabama*, 132 U. S. 472; *Lyng* v. *Michigan*, 135 U. S. 166; *McCall* v. *California*, 136 U. S. 104; *Crutcher* v. *Kentucky*, 141 U. S. 47; *Pacific Express Co.* v. *Seibert*, 142 U. S. 339; *Massachusetts* v. *Western Union Tel. Co.*, 141 U. S. 40; *Pullman's Car Co.* v. *Pennsylvania*, 141 U. S. 18. See also *Pensacola Tel. Co.* v. *Western Union Tel. Co.*, 96 U. S. 1; *Telegraph Co.* v. *Texas*, 105 U. S. 460; *Western Union Tel. Co.* v. *Massachusetts*, 125 U. S. 530; *Ratterman* v. *Western Union Tel. Co.*, 127 U. S. 411; *Philadelphia Southern Steamship Co.* v. *Pennsylvania*, 122 U. S. 326.

It thus appears that the principle we contend for has been repeatedly reaffirmed by this court in every decision, and in every case in which the question was presented. Upon no principle of law have the opinions of this court been so clearly defined and so often affirmed. Any interference on the part of the State with interstate commerce is violative of the Federal Constitution.

The Supreme Court of Mississippi has endeavored at great length to show that the utterances of this court upon this question have been so divergent and so conflicting that no authoritative ruling can be deduced from them. The Mississippi court admits that if it should be governed by the principles announced in *Pensacola Tel. Co.* v. *Western Union Tel. Co.*, 96 U. S. 1, and the other cases cited, the settlement of the controversy would be made without great difficulty in accordance with the contention of the appellant; but it contends that the principles announced by the last cited cases are diametrically opposed to those announced in *State Tax on Railway Gross Receipts*, 15 Wall. 284; *Osborne* v. *Mobile*, 16 Wall.

479; *Wiggins Ferry Co.* v. *East St. Louis,* 107 U. S. 365; *Maine* v. *Grand Trunk Railway Co.,* 142 U. S. 217; *Ficklen* v. *Shelby County,* 145 U. S. 1; and *St. Louis* v. *Western Union Tel. Co.,* 148 U. S. 92.

If that court had made a careful analysis of the last cited cases and had followed the interpretation put upon those cases by this court in subsequent decisions, their apparent conflict would have disappeared.

III. In making no exception for business done by the Telegraph Company for the government of the United States, both interstate and intrastate, the act of the State of Mississippi is *ultra vires,* unconstitutional, and void.

This is a tax upon the entire operations of the company and necessarily includes all business done by the telegraph company, both foreign and domestic, and it is admitted in this case that a part of the business of the telegraph company consists of messages sent for the government of the United States, its agents and officers.

The proposition submitted is that as there is no exception in the act as to governmental messages, the act is in effect a tax upon business of the United States government and a restraint and regulation upon the operations of the officers of the government in discharge of their governmental duties. While it is universally recognized that the property of a governmental agent situate within the State is subject to taxation as all other property within the State, it has been repeatedly declared that no State can impose a burden upon the business or occupation of such agency; it matters not whether such business of said government agent be intrastate or interstate, or partly both.

*Mr. Marcellus Green* for defendant in error.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

It is settled that where by way of duties laid on the transportation of the subjects of interstate commerce, or on the

receipts derived therefrom, or on the occupation or business of carrying it on, a tax is levied by a State on interstate commerce, such taxation amounts to a regulation of such commerce and cannot be sustained. But property in a State belonging to a corporation, whether foreign or domestic, engaged in foreign or interstate commerce, may be taxed, or a tax may be imposed on the corporation on account of its property within a State, and may take the form of a tax for the privilege of exercising its franchises within the State, if the ascertainment of the amount is made dependent in fact on the value of its property situated within the State, (the exaction, therefore, not being susceptible of exceeding the sum which might be leviable directly thereon,) and if payment be not made a condition precedent to the right to carry on the business, but its enforcement left to the ordinary means devised for the collection of taxes. The corporation is thus made to bear its proper proportion of the burdens of the government under whose protection it conducts its operations, while interstate commerce is not in itself subjected to restraint or impediment.

As pointed out by Mr. Justice Field in *Horn Silver Mining Company* v. *New York,* 143 U. S. 305, the right of a State to tax the franchise or privilege of being a corporation, as personal property, has been repeatedly recognized by this court, and this whether the corporation be a domestic, or a foreign corporation doing business by its permission within the State. But a State cannot exclude from its limits a corporation engaged in interstate or foreign commerce, or a corporation in the employment of the general government, either directly in terms or indirectly by the imposition of inadmissible conditions. Nevertheless the State may subject it to such property taxation as only incidentally affects its occupation, as all business, whether of individuals or corporations, is affected by common governmental burdens. *Ashley* v. *Ryan,* 153 U. S. 436, and cases cited.

Doubtless, no State could add to the taxation of property according to the rule of ordinary property taxation, the burden of a license or other tax on the privilege of using, con-

structing, or operating an instrumentality of interstate or international commerce or for the carrying on of such commerce; but the value of property results from the use to which it is put and varies with the profitableness of that use, and by whatever name the exaction may be called, if it amounts to no more than the ordinary tax upon property or a just equivalent therefor, ascertained by reference thereto, it is not open to attack as inconsistent with the Constitution. *Cleveland, Cincinnati &c. Railway* v. *Backus*, 154 U. S. 439, 445.

The method of taxation by "a tax on privileges" has been determined by the Supreme Court of Mississippi to be in harmony with the constitution of that State, and that, "where the particular arrangement of taxation provided by legislative wisdom may be accounted for on the assumption of compounding or commuting for a just equivalent, according to the determination of the legislature, in the general scheme of taxation, it will not be condemned by the courts as violative of the [state] constitution." *Vicksburg Bank* v. *Worrell*, 67 Mississippi, 47, 58. In that case privilege taxes imposed on banks of deposit or discount, which varied with the amount of capital stock or assets, and were declared to be "in lieu of all other taxes, state, county or municipal, upon the shares and assets of said banks," came under review, and it was decided that the privilege tax, to be effectual as a release from liability for all other taxes, must be measured by the capital stock and entire assets or wealth of the bank, and that real estate bought with funds of the bank was exempt from the ordinary *ad valorem* taxes, but was part of the assets of the bank to be considered in fixing the basis of its privilege tax.

And in the case at bar the Supreme Court, in its examination of the liability of plaintiff in error for the taxes in question, said: "It will be thus seen at once that this is a tax imposed upon a telegraph company, in lieu of all others, as a privilege tax, and its amount is graduated according to the amount and value of the property measured by miles. It is to be noticed that it is in lieu of all other taxes, state, county, municipal. The reasonableness of the imposition appears in

the record, as shown by the second count of the declaration and its exhibits whereby the appellant seems to be burdened in this way with a tax much less than that which would be produced if its property had been subjected to a single *ad valorem* tax." This exposition of the statute brings it within the rule where *ad valorem* taxes are compounded or commuted for a just equivalent, determined by reference to the amount and value of the property. Being thus brought within the rule, the tax becomes substantially a mere tax on property and not one imposed on the privilege of doing interstate business. The substance and not the shadow determines the validity of the exercise of the power.

The act in prescribing the ascertainment of the charge as to telegraph companies operating less than one thousand miles of wire, was directed to reach a reasonable commutation of the amount which the company would be compelled to pay if the taxation were *ad valorem*. The taxation was neither arbitrary nor discriminating, nor, so far as we are advised, was payment made a condition precedent to doing business, but collection was enforceable by suit and the remedies pertaining thereto, and not otherwise. Code Mississippi, 1880, §§ 585, 587, 588, 589, 594.

We concur with the view of the act thus expressed by the Supreme Court of the State, and, accepting it as correct, it is obvious that the case does not fall within the line of decisions in which state laws have been held inoperative because in conflict with, or amounting to the exercise of, or the assertion of control over, a power vested exclusively in the United States. In those decisions the interference with the commercial power was found to be direct, and not the mere incidental effect of the requirement of the usual proportional contribution to public maintenance.

They need not be reëxamined here, as the taxation in question, according to the proper interpretation of the statute, is in principle such as was sustained in *Western Union Telegraph Co.* v. *Massachusetts*, 125 U. S. 530; *Ratterman* v. *West. Un. Telegraph Co.*, 127 U. S. 411; *Pullman's Palace Car Co.* v. *Pennsylvania*, 141 U. S. 18; *Massachusetts* v. *West. Un. Tele-*

*graph Co.*, 141 U. S. 40; *Maine* v. *Grand Trunk Railway*, 142 U. S. 217.

In *Massachusetts* v. *Western Union Tel. Co.*, it was held that the tax imposed by the statutes of Massachusetts requiring every telegraph company owning a line of telegraph within the State to pay to the state treasurer "a tax upon its corporate franchise at a valuation thereof equal to the aggregate value of the shares in its capital stock," deducting such portion of that valuation as is proportional to the length of its lines without the State, and deducting also an amount equal to the value of its real estate and machinery, subject to local taxation within the State, was in effect a tax upon the corporation on account of property used by it within the State; and was constitutional and valid as applied to a telegraph company incorporated by another State, and which had accepted the rights conferred by Congress by section 5263 of the Revised Statutes. In arriving at this conclusion, *Western Union Tel. Co.* v. *Massachusetts*, 125 U. S. 530, was followed, and the following propositions affirmed in that case were reiterated by Mr. Justice Gray, delivering the opinion of the court: "The franchise of the company to be a corporation, and to carry on the business of telegraphing, was derived not from the act of Congress, but from the laws of the State of New York, under which it was organized; and it never could have been intended by the Congress of the United States, in conferring upon a corporation of one State the authority to enter the territory of any other State, and to erect its poles and lines therein, to establish the proposition that such a company owed no obedience to the laws of the State into which it thus entered, and was under no obligation to pay its fair proportion of the taxes necessary to the support of the government of that State. 125 U. S. 547, 548. By whatever name the tax may be called, as described in the laws of Massachusetts, it is essentially an excise upon the capital of the corporation; and those laws attempt to ascertain the just amount which any corporation engaged in business within its limits shall pay as a contribution to the support of its government upon the amount and value of the

capital so employed by it therein. 125 U. S. 547. The tax, though nominally upon the shares of the capital stock of the company, is in effect a tax upon that organization on account of property owned and used by it in the State of Massachusetts; and the proportion of the length of its lines in that State to their entire length throughout the whole country is made the basis for ascertaining the value of that property. Such a tax is not forbidden by the acceptance on the part of the telegraph company of the rights conferred by § 5263 of the Revised Statutes, or by the commerce clause of the Constitution. 125 U. S. 552. The statute of Massachusetts is intended to govern the taxation of all corporations doing business within its territory, whether organized under its own laws or under those of some other State; and the rule adopted to ascertain the amount of the value of the capital engaged in that business within its boundaries, on which the tax should be assessed, is not an unfair or unjust one; and the details of the method by which this was determined have not exceeded the fair range of legislative discretion. 125 U. S. 553."

In the case before us, the tax was graduated according to the amount and value of the property measured by miles, and was in lieu of taxes levied directly on the property. In marking the distinction between the power over commerce and municipal power, literal adherence to particular nomenclature should not be allowed to control construction in arriving at the true intention and effect of state legislation. We are of opinion that it was within the power of the State to levy a charge upon this company in the form of a franchise tax but arrived at with reference to the value of its property within the State and in lieu of all other taxes, and that the exercise of that power by this statute, as expounded by the highest judicial tribunal of the State in the language we have quoted, did not amount to a regulation of interstate commerce or put an unconstitutional restraint thereon.

*Judgment affirmed.*

Mr. Justice Brewer, with whom concurred Mr. Justice Harlan, dissenting.

Mr. Justice Harlan and I are unable to concur in the foregoing decision. We are of opinion that the act of the State of Mississippi, fairly construed, imposes a tax upon the plaintiff in error for the privilege of doing within the limits of the State the business of an interstate carrier of telegraphic messages, and is, therefore, a regulation of interstate commerce; and that this characteristic of the tax is not affected by the question whether the amount thereof be more or less than the sum which the company would have had to pay if its property had been subjected to the ordinary property tax levied for state, county, and municipal purposes.