(78 South. 93)

### LOUISVILLE & N. R. CO. v. STATE.
### (3 Div. 300.)

(Supreme Court of Alabama. Dec. 20, 1917.
On Rehearing, Jan. 24, 1918.)

1. TAXATION ☞40(8) — FRANCHISE TAXES — FOREIGN CORPORATIONS.

Acts 1915, p. 397, § 16, providing for a franchise tax on domestic corporations based on paid-up capital stock and on foreign corporations, a tax at the same rate based on the amount of capital actually employed within the state, which follows Const. 1901, §§ 229, 232, is not arbitrary discrimination against foreign corporations on account of the different bases of computing the tax.

2. CONSTITUTIONAL LAW ☞16 — STATUTES ☞217 — CONSTRUCTION — CONSTITUTIONAL DEBATES.

In construing the Constitution and statutes enacted in pursuance of its sections, debates in the constitutional convention are persuasive, but not conclusive.

3. TAXATION ☞40(8) — FRANCHISE TAXES — FOREIGN CORPORATIONS.

Acts 1915, p. 397, § 16, imposing a tax as required by Const. 1901, §§ 229, 232, on a different basis for foreign and domestic corporations, cannot be said to be unconstitutional under Const. 1901, §§ 214, 217, fixing the maximum ad valorem tax, and prohibiting exemption of certain corporations, since constitutional sections are on a parity.

4. COMMERCE ☞74—INTERSTATE COMMERCE—FRANCHISE TAXES.

Acts 1915, p. 397, § 16, imposing a franchise tax on foreign corporations based on the capital actually employed within the state, is not unconstitutional as an unwarranted burden on interstate commerce.

5. STATUTES ☞64(8)—PARTIAL INVALIDITY—CORPORATIONS—FRANCHISE TAXES.

Acts 1915, p. 397, § 16, subd. 4, prohibiting foreign corporations not having paid the required franchise tax from doing business other than interstate business within the state, is so separable from the remainder of section 16, which imposes a franchise tax, that, if invalid, it will be disregarded, and the remainder of the act upheld.

Sayre, J., dissenting.

On Rehearing.

6. CONSTITUTIONAL LAW ☞48 — CONSTRUCTION OF CONSTITUTION.

Courts should hesitate to strike down the organic law of the sovereign states as repugnant to the federal Constitution, especially when the history of its adoption was that it was purposely worded so as to avoid injustice.

Appeal from Circuit Court, Montgomery County; Gaston Gunter, Judge.

Action by the State, against the Louisville & Nashville Railroad Company, for collection of a franchise tax. From the judgment rendered, the Railroad Company appeals. Affirmed. On rehearing, judgment corrected and affirmed, and application for rehearing overruled.

Goodwyn & McIntyre, Jones, Thomas & Field, and J. B. Jones, all of Montgomery, and H. L. Stone, of Louisville, Ky., for appellant. W. L. Martin, Atty. Gen., and Lawrence E. Brown, Asst. Atty. Gen., for the State.

ANDERSON, C. J. The trial court, that is, the circuit court, held that the appellant, a foreign corporation, was liable for a franchise tax as provided by the act of 1915, based upon the amount of "capital actually employed in this state," regardless of the proportion it may bear to the appellant's capital stock; and in doing this followed literally so much of the act as related to a franchise tax on corporations, and which said act to this extent was worded like section 232 of the Constitution of 1901. So much of section 16 of the act of 1915, page 397, as is essential to an understanding of the question involved, reads as follows:

### Franchise Tax of Corporations.

"Sec. 16. Every corporation organized under the laws of this state, except strictly benevolent, educational or religious corporations, or banks or banking institutions, or building and loan associations regularly organized under the laws of this state, or any other state, shall pay annually to the state an annual franchise tax of forty cents on each one thousand dollars of its paid-up capital stock. Every corporation organized under the laws of any other state, nation or territory and doing business in this state, except strictly benevolent, educational or religious corporations, or banks or banking institutions, or building and loan associations, shall pay annually to the state an annual franchise tax of forty cents on each one thousand dollars on the amount of capital actually employed in this state.

Subdivision 1. The president or any executive officer or the secretary of every corporation subject to a franchise tax under this section, shall make a written statement under oath to the probate judge showing the name of the corporation, the state or country under whose laws incorporated, its principal place of business in this state; if a domestic corporation, the amount of its capital stock; if a foreign corporation, the actual amount of capital employed in this state; if it is a corporation at the time of the statement authorized to do business in this state; or the actual amount of capital it is proposed shall be employed in this state, if it is a corporation not then qualified to do business in this state."

[1] It will be noted that this statute deals with both domestic and foreign corporations, fixes the same rate per thousand on each, the only difference being that as to domestic corporations the franchise tax is 40 cents on each thousand dollars of its "paid-up capital stock," while as to foreign corporations it is 40 cents per thousand on the amount of "capital actually employed in this state." This statute is therefore entirely different from the one condemned in the case of Southern Ry. Co. v. Greene, 216 U. S. 400, 30 Sup. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247; the one there considered being section 2391 et seq. of the Code of 1907, article 20, which deals with and provides for a franchise tax on foreign corporations only, and it did not appear that a similar tax was imposed upon domestic corporations of a similar character. See the Greene Case, supra, also the dissenting opinion of the writer, 160 Ala. 418, 49 South. 404. This case cannot therefore have

any bearing upon the present statute, unless it can be said that the present statute violates the Fourteenth Amendment to the federal Constitution because an unwarranted and arbitrary discrimination arises out of the fact that it provides for the basis of the tax, upon the paid-up capital stock of domestic corporations and upon the capital actually employed in the state when dealing with foreign corporations. This distinction as made by the Legislature was for the obvious purpose of complying with our state Constitution of 1901, as section 229 authorizes a franchise tax on domestic corporations in "proportion to the amount of capital stock," and section 232 authorized a franchise tax as to foreign corporations, based upon the actual amount of "capital employed in this state." The rate on each is the same, and the question is, Does the method prescribed for ascertaining and fixing the amount of the tax operate as an arbitrary discrimination against foreign corporations? We do not think that the act disclosed upon its face such a defect, and it was not the intent of the Legislature to discriminate against foreign corporations in the adoption of the same. The act, both as to foreign and domestic corporations, employs the exact language of the Constitution, and if we look to the journal and debates of the constitutional convention upon the adoption of sections 229 and 232, we think it is well demonstrated that the difference between the two was made for the sole purpose of avoiding a discrimination against foreign corporations. The committee on corporations reported to the convention section 229 as it now appears in our Constitution, and section 232, as reported, contained the words *"in proportion to the amount of its capital stock."* An amendment was offered by Mr. Kyle, changing the words as italicized so as to read, *"shall be based on the actual amount of capital employed in this state."* In support of this amendment Mr. Kyle, among other things, said:

"For instance, take the Tennessee Coal & Iron Co. They have a capitalization of $30,-000,000. They have large property in Tennessee as well as in Alabama. Therefore it should not be required of them, or any other corporation of like character, to pay its franchise tax upon property they own in other states. Take the Southern Iron & Foundry Company. They have a capitalization of $600,000 and own a small plant in this state. The main plant is in Tennessee. This amendment would reach all the capital they had in use in Alabama, but they would not have to pay upon the entire capital stock. The Western Union Telegraph Company, with $80,000,000 capital, would have to pay on the capital of $80,000,000 instead of what she has in this state. So this reaches the matter and makes it the property in possession of the state. The committee will accept that I hope."

[2] The section as amended was then adopted. Of course, this court is not bound by the debates of the constitutional convention, but they are often looked to, and the one in question is very persuasive that the framers of our organic law did not intend to discriminate against foreign corporations as to a franchise tax and adopted the foregoing amendment to section 232 for the sole purpose of avoiding a discrimination by fixing the basis for the franchise tax upon the amount of property actually employed in this state. We therefor hold that the act does not, upon the surface, or when taken in connection with the history of the sections of the Constitution, under which it was framed, show a discrimination against foreign corporations. We are not unmindful of the rule of the United States Supreme Court that in determining the validity of a statute it will not be confined to form, but will go to the substance of the act and condemn it, if in the ordinary enforcement and operation thereof it results in a violation of the Constitution, though unobjectionable in form, but we are unable to see how the enforcement of this act can operate as an arbitrary discrimination against the class to which this appellant belongs. There can be little or no discrimination between domestic and foreign corporations in the general and ordinary operation of our statute. Of course there may be instances when the burden will fall heavier on the one than the other, in case a foreign and a domestic corporation may be both undercapitalized, as well as rare cases when the burden may fall heavier upon a domestic corporation which is overcapitalized; but in dealing with the vitality of our statutes, and especially when it also involves the life of certain sections of our organic law, we must measure them by general conditions rather than obsolete or exceptional instances. We repeat that the distinction made between domestic and foreign corporations in arriving at the amount of the franchise tax respectively was intended as an equitable and just method of doing so, and for the obvious purpose of avoiding an unjust and arbitrary discrimination against the class to which this appellant belongs.

[3] We are not impressed with the suggestion of appellant's counsel that the act in question violates sections 214 and 217 of our state Constitution. In the first place, it is a franchise, and not a property tax, and the fact that the amount, as to foreign corporations, is ascertainable proportionate to the amount of property actually employed within the jurisdiction of the state of Alabama does not convert it into a direct or ad valorem tax as dealt with in sections 214 and 217. Moreover, if such was not the case, the act is an exact copy, in part, of section 232 of the Constitution, and which said section should be considered in connection with said sections 214 and 217 and not subordinate thereto. Section 214 of the Constitution merely fixes a maximum rate on the ad valorem tax, and section 217 was intended to prevent the Legislature from exempting any private or domestic corporation or individual other than reli-

gious, educational, and charitable institutions from taxation; while sections 229 and 232 deal with a franchise tax on domestic and foreign corporations, respectively, and there is not the slightest conflict between these respective sections, and, while the basis for assessment of a franchise tax upon domestic and foreign corporations is different, there is no reason why the result shall not be uniform, and will certainly not work an arbitrary discrimination against foreign corporations unless they and the domestic ones with which they are compared are both abnormal; that is, greatly undercapitalized. Hence we do not think that the recent case of Greene v. Louis. Inter. R. Co., 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88, is in conflict. There the act was repugnant to the Constitution of the state, notwithstanding section 182 of said Constitution, which is quite different from our sections 229 and 232. Section 182 there merely authorized the Legislature to fix a different method for assessing and collecting taxes upon the property of railroads, and the court simply held that this did not authorize a method or system that would prevent a uniform tax as provided by other sections of the Constitution. Here we have two sections of our Constitution, dealing expressly with a franchise tax and saying how it must be assessed, and which must be construed in connection with other provisions of our Constitution, and which do not seem to be identical with sections 171 and 174 of the Kentucky Constitution. Therefore the act in question is in thorough accord with our own Constitution, and this appellant cannot complain of same, unless the method for the assessment of the tax in question, as prescribed both by sections 229 and 232 of the Constitution as well as the act, will produce results so wanting in uniformity as to amount to an arbitrary discrimination against it.

[4] The statute is not violative of the federal Constitution because an unwarranted burden upon interstate commerce. St. Louis R. R. v. Arkansas, 235 U. S. 350, 35 Sup. Ct. 99, 59 L. Ed. 265. It is true, the ascertainment of the amount of property upon which the franchise tax was based under the Arkansas statute was one-twentieth of 1 per cent. of the outstanding capital stock represented by property owned and used in business transacted in that state; but we do not think that the fact that there was a proportionate basis between the property in the state and the capital stock was a material factor which induced the court to uphold the said statute. Indeed, the opinion indicates in original expression, as well as in quoting from other cases, that such a tax could be upheld if based upon or measured by property within the state. Says the court speaking through Mr. Justice Pitney:

"We therefore accept the construction of Act No. 112, that we have quoted from the opinion of the state court, which is, in short, that it imposes an annual franchise tax upon the right to exist as a corporation or to exercise corporate powers within the state, *the amount of the tax being fixed solely by reference to the property of the corporation that is within the state, and used in business transacted within the state, and excluding any imposition upon or interference with interstate commerce.*"

Again, the court said, quoting from the opinion of Mr. Chief Justice Fuller in the case of Postal Tel. Co. v. Adams, 155 U. S. 688, 15 Sup. Ct. 268, 360, 39 L. Ed. 311:

"It is settled that where by way of duties laid on the transportation of the subjects of interstate commerce, or on receipts derived therefrom, or on the occupation or business of carrying it on, a tax is levied by a state on interstate commerce, such taxation amounts to a regulation of such commerce, and cannot be sustained. *But property in a state belonging to a corporation, whether foreign or domestic, engaged in foreign or interstate commerce, may be taxed, or a tax may be imposed on the corporation on account of its property within a state, and may take the form of a tax for the privilege of exercising its franchises within the state, if the ascertainment of the amount is made dependent in fact on the value of its property situated within the state, the exaction, therefor, not being susceptible of exceeding the sum which might be leviable thereon,* and if payment be made a condition precedent to the right to carry on the business, but its enforcement left to the ordinary means devised for the collection of taxes." (Italics supplied.)

We think that our statute falls squarely under the rule sanctioned in the Adams Case supra, and can well be upheld under the principle of the Arkansas Case, supra, notwithstanding the method of arriving at the amount is not identical. Indeed, our franchise tax is less in rate than the Arkansas tax; it is one-twentieth of 1 per cent. equal to 50 cents per thousand, while ours is but 40 cents per thousand.

[5] It is unnecessary to deal with subdivision 4 of section 16 of the act at present, as its validity can be determined in a case where the state may attempt to enforce the penalty. It is sufficient to say that, should we ever determine that the same violates the Constitution, federal or state, it is so separable from that part now under consideration, that it will be disregarded and the remainder of the act upheld.

The judgment of the circuit court is affirmed.

Affirmed. All the Justices concur, except SAYRE, J., who dissents.

### On Rehearing.

ANDERSON, C. J. While counsel for appellant naturally question the soundness of the foregoing opinion as to each point decided adversely to their client, they concede that the discussion of the federal question is full and sufficient, but complain that the opinion is too short in dealing with their insistence that the act violates our state Constitution, and also complain that the said opinion does not deal with the cases of Phœnix Carpet Co. v. State, 118 Ala. 143, 22 South. 627, 72 Am-

St. Rep. 143, and State v. Stonewall Ins. Co., 89 Ala. 338, 7 South. 753. It is rather refreshing, at this day and time, when there is such a general complaint against long judicial opinions, to be charged with the sin of brevity, and while we think that the original opinion not only properly decides the points involved, but does so at sufficient length, we will, out of deference to counsel, amplify the discussion, though we may deem it unnecessary. In the first place, we did not deal with the two cases supra, for the reason that they are inapt, as they dealt with the Constitution of 1875, which did not contain sections 229 and 232 of the Constitution of 1901, and a statute might have violated clauses of the old Constitution, though expressly sanctioned by the present one. Moreover, the court in the Greene Case, 160 Ala. 396, 49 South. 404, devoted pages to a discussion of whether or not the tax involved was a franchise tax, holding that it was, and after a full consideration and discussion of the Phœnix and Stonewall Cases, supra, and that holding was not disturbed by the United States Supreme Court upon appeal. The tax in question is not only denominated a franchise tax by the Legislature, but it is expressly authorized by sections 229 and 232 of the Constitution, and is to be levied as there directed. The act is in the exact language of sections 229 and 232 of the Constitution; and, if it is repugnant to other sections of our state Constitution, then sections 229 and 232 must be also, and if we yielded to the contention of counsel we would commit the judicial folly of holding certain sections of our state Constitution violative of other sections thereof. The act is not only in the language of our state Constitution, but in so far as it applies to foreign corporations seems to harmonize with the opinion of Chief Justice Fuller in the case of Postal Tel. Co. v. Adams, 155 U. S. 688, 15 Sup. Ct. 268, 360, 39 L. Ed. 311.

[6] We repeat, the only debatable question in this case is whether or not the different methods of assessing a franchise tax upon domestic corporations, as provided by section 229 of the Constitution of 1901, and upon foreign corporations as provided by section 232 of said Constitution, will amount to such an arbitrary discrimination against the latter as to violate the federal Constitution. As heretofore stated, we think, under normal conditions, that is, in dealing with corporations ordinarily capitalized and conducted, the burden will fall upon them equally and equitably. At any rate, if the act is repugnant to the federal Constitution, then section 232 of our Constitution must be also, and this, or any other court, should hesitate before striking down the organic law of a sovereign state, especially when the history of the adoption of same plainly shows that it was purposely so worded as to deal fairly and justly with foreign corporations, and that the amendment to section 232 was made for the express purpose of avoiding a discrimination against foreign corporations doing business in this state.

The Attorney General concedes that a clerical error was committed in the amount of the judgment to the extent of $68, which should be deducted from the judgment rendered by the trial court, and the judgment of the circuit court is corrected to this extent, and, as corrected, is affirmed.

Corrected and affirmed, and application for rehearing is overruled.