53 So.2d 745

**STATE v. TRAVELERS INS. CO.**
3 Div. 586.

Supreme Court of Alabama.
March 8, 1951.

Rehearing Denied June 28, 1951.

A. A. Carmichael, Atty. Gen., and Willard W. Livingston and M. Roland Nachman, Jr., Asst. Attys. Gen., for appellant.

63

Spain, Gillon, Grooms & Young, Frank E. Spain, and Ralph B. Tate, all of Birmingham, for appellee.

SIMPSON, Justice.

The State has appealed from a decree overruling its demurrer to the bill of appellee filed in the circuit court, in equity, to challenge an assessment made by the Department of Revenue for its annual franchise tax.

The assessment was for the year 1949 and under the law the appellee was required to pay an annual franchise tax of $2.00 on "each one thousand dollars of the actual amount of capital employed in this state." Code 1940, Title 51, § 348; Constitution 1901, § 232.

The constitutional provision relating to the subject is: " * * * The legislature shall, by general law, provide for the payment to the State of Alabama of a franchise tax by such corporation [foreign], but such franchise tax shall be based on the actual amount of capital employed in this state. * * *" Constitution 1901, § 232.

The statute implementing this constitutional provision reads as pertinent: "Every corporation organized under the laws of any other state, nation or territory and doing business in this state, except strictly benevolent, educational or religious corporations, shall pay annually to the state an annual franchise tax of two dollars on each one thousand dollars of the actual amount of capital employed in this state. * * *" § 348, supra.

The bill shows that the appellee insurance company is a foreign corporation with its home office in Connecticut and was engaged in an interstate business by and through independent contractors called agents, who were residents of Alabama; that it was a stock insurance company, the principal business of which was the writing of life and accident insurance; that the authority of these agents was limited to soliciting applications for insurance, submitting these applications for acceptance or rejection and collecting and remitting to appellee the premiums collected on the policies of insurance, less the agent's commission; usually the premiums collected by appellee's agent were deposited in Alabama banks in the name of the agent and at stated intervals the agent would draw checks on the bank in appellee's favor in payment of the amount due appellee for the premiums collected, less the agent's commission thereon; no salary or wage was paid the agent, the only compensation being the agreed percentage commissions on the individual premiums collected; the agent paid all expenses of maintaining an office and all other expenses incident to the securing of the policy; appellee exercised no control whatsoever over when, how and where its agent should secure an application for himself; that each of appellee's so-called agents in Alabama during the year 1949 was an independent contractor engaged in building and operating his own business in the manner aforesaid.

The bill also shows that the State Department of Revenue, purporting to act under these provisions, assessed appellee's franchise tax for 1949 on the basis of the proportionate total assets of the company by the use of a so-called "allocation formula," which we will attempt to thus briefly describe: The department determined from the records of the corporation the total assets of the corporation to be $1,775,026,769.03. From these total assets there was deducted the "total amount of all liabilities except capital," as shown by the records of the company, to produce a capital figure of $182,376,634.27; this total capital figure was divided into two parts, the physical property used in the business amounting to $13,310,454.51 and the "other capital" amounting to $169,066,179.76; the physical property used in the business was allocated to Alabama upon a so-called situs basis, producing for the state $1050.68; Alabama's part of the "other capital" was apportioned to the state by means of an allocation fraction and the result added to the $1050.68 to produce the actual amount of capital employed in Alabama of $478,662.68. The assessment seems to show that the allocation fraction was developed by the use of two criteria of Alabama business activity, premiums received by the company from Alabama and commissions allegedly paid by the company to its Alabama agents. The Alabama premium income of the company was divided by the total premium income of the company to get the Alabama percentage of premium income, and the figure representing the Alabama commissions was divided by the figure representing the total commissions of the company to get the Alabama payroll percentage. The Alabama premium percentage was

averaged with the Alabama payroll percentage to get the allocation fraction.

The formula devised is a rather complicated theory and the chart is here reproduced as it was applied to the instant assessment and as exhibited with the bill.

basis of taxation as interpreted by our court is upon the capital of which the state had actual possession; that it employed no other capital in Alabama; that it owned no property of any kind in Alabama; it had no property subject to legal

"Permit Fee Information

For Foreign Insurance Corporation

To the State Department of Revenue:

"The ————, a corporation organized under the laws of ————, being desirous of securing from the State of Alabama a 1949 Permit for the transaction of business therein, files the following under Revenue Code of Alabama, Approved May 31, 1940, Title 51, Section 345, and Under The General Provisions of Said Title 51:

| "1. Operational Data | As of Year Ending December 31st, 1948 | | Alabama Percent (to four figures) |
| | Everywhere | Alabama | |
| --- | --- | --- | --- |
| "Annual Premiums | 266,835,633.32 | 962,539.25 | .3007 |
| "Annual Payroll (Including Salaries, Wages, Commissions) | 46,103,266.54 | 94,242.46 | .2044 |

2. "Computation of Capital Employment

"Total Assets ................................................... 1,775,026,769.03
(minus)
"Total amount of all liabilities except Capital..................... 1,592,650,134.76

(equals)
"Total 'Capital' ............................................... 182,376,634.27
(minus)
"Physical property used in business............................. 13,310,454.51
(not held as investment)

(equals)
"Other 'Capital' ............................................... 169,066,179.76
(multiplied by)
"Alabama percent ............................................... .2825

(percents in Item 1 divided by two)                                (equals)
"Alabama's 'Other Capital' ..................................... 477,612.00
(plus)
"Physical property used in business in Alabama.................... 1,050.68

(equals)
" 'Capital' employed in Alabama.................................. 478,662.68"

The essence of the bill's allegations makes the contention that the theory of the State's assessment is erroneous; that the only capital actually employed in Alabama amounted to the aforesaid $1050.68, consisting of office furniture and fixtures, typewriters, stationery, and other office equipment used in the office of appellee's claim adjustor in Birmingham; that the execution and levy in Alabama; it had no loans of money secured by existing mortgages to it on real estate in Alabama; had no investments of any kind in Alabama; and had no money on deposit in Alabama banks.

No issue of fact is up for consideration on this appeal, but only the deter-

mination of the sufficiency vel non of the allegations of the bill, the court assuming as true all well-pleaded facts stated therein. State v. Alabama Power Co., 254 Ala. 327, 48 So.2d 445.

Solution of the question necessarily entails the determination of just what constitutes "actual amount of capital employed" in the state within the meaning of these statutory and constitutional mandates, as applied to appellee's business.

To restate the State's contention, it is that the term "actual amount of capital employed" in the state includes a relative proportion of assets of a foreign corporation (tangible and intangible) used in the conduct of its business; regardless of where situated, and that regardless of the lack of statutory authorization to use the "formula method" of proportion, the department was authorized to devise the formula as establishing the correct admeasurement in apportioning to Alabama the proportionate amount of its total capital or assets as the actual amount of capital employed.

▮▮▮ We do not think the position of the State can be sustained under the decisions governing. We have said the words "actual amount of capital employed" are used in their natural and ordinary signification and in the generally accepted sense they have application to the properties and monies set apart from other uses and invested or employed in the operation of the business in the state with the view to income or profit therefrom. State v. Burchfield Bros., 211 Ala. 30, 99 So. 198. We think "actual" must be given some significance in construing the provision. The word is defined in Webster's New International Dictionary to be: "Existing in act or reality; * * * in fact; * * * opposed to potential, possible, ostensible, virtual, speculative, conceivable, ideal, theoretical, hypothetical or nominal * * *." It seems to us then that the actual amount of capital is the antithesis of "allocated capital." The method of arriving at the formula is entirely theoretical. This same idea was given expression in Gorham Mfg. Co. v. Travis, 274 F. 975, where the district court was considering the New York allocation formula for determining a foreign corpora-

tion's privilege tax. Judge Learned Hand observed: "With all deference when applied to corporations having business in several states, *any effort at allocation must be more or less arbitrary and fictitious,* as is indeed shown by the record at bar." (Emphasis supplied.) 274 F. 978.

In Louisville & N. R. Co. v. State, 201 Ala. 317, 78 So. 93, Mr. Chief Justice Anderson, writing for the court, quoted from the remarks of Judge Kyle in the proceedings of the 1901 Constitutional Convention when the constitutional section of instant concern was under consideration, which strongly indicated that the court then thought the term meant capital actually situated in Alabama. Approved quotations in that case from St. Louis Southwestern R. Co. v. State of Arkansas ex rel. Norwood, 235 U.S. 350, 35 S.Ct. 99, 59 L.Ed. 265, and Postal Telegraph Cable Co. v. Adams, 155 U.S. 688, 15 S.Ct. 268, 360, 39 L.Ed. 311, here reproduced with the italics of our own court, seem to emphasize that view:

"We therefore accept the construction of Act No. 112, that we have quoted from the opinion of the state court, which is, in short, that it imposes an annual franchise tax upon the right to exist as a corporation or to exercise corporate powers within the state, *the amount of the tax being fixed solely by reference to the property of the corporation that is within the state, and used in business transacted within the state, and excluding any imposition upon or interference with interstate commerce.*" St. Louis Southwestern R. Co. v. State of Arkansas ex rel. Norwood, supra.

"It is settled that where by way of duties laid on the transportation of the subjects of interstate commerce, or on receipts derived therefrom, or on the occupation or business of carrying it on, a tax is levied by a state on interstate commerce, such taxation amounts to a regulation of such commerce, and cannot be sustained. *But property in a state belonging to a corporation, whether foreign or domestic, engaged in foreign or interstate commerce, may be taxed, or a tax may be imposed on the corporation on account of its property within a state, and may take the form*

*of a tax for the privilege of exercising its franchises within the state, if the ascertainment of the amount is made dependent in fact on the value of its property situated within the state, the exaction, therefor, not being susceptible of exceeding the sum which might be leviable thereon,* and if payment be not made a condition precedent to the right to carry on the business, but its enforcement left to the ordinary means devised for the collection of taxes." Postal Telegraph Co. Cable v. Adams, supra.

We think it manifest the italicized portions evinced the opinion of our court as then constituted that the actual amount of capital employed in the state by a foreign corporation was to be based on the property of the corporation that is within the state and used in business transacted within the state. Subsequent decisions point to the same conclusion.

In Consolidated Coal Co. v. State, 236 Ala. 489, 491, 183 So. 650, 651, it was stated: "The franchise tax upon foreign corporations authorized by Section 232 of the Constitution of Alabama 'based on the actual amount of capital employed in this state,' and levied by the General Revenue Law of 1935 (Acts of 1935, p. 387, Sec. 318) upon foreign corporations 'doing business in this State,' is an excise tax for the privilege of exercising corporate functions in Alabama, measured by the actual amount of capital employed in Alabama in the exercise of such corporate functions, capital employed in a business for which the corporation was created and has its existence as a corporate entity."

And, as noticed in Hollingsworth & Whitney Co. v. State, 241 Ala. 96, 1 So.2d 387, 389, "Employment [of capital], however, is not the same as investment, or ownership of property."

For the same interpretation see State v. Seals Piano Co., 209 Ala. 93, 95 So. 451, and State v. Jackson Securities & Investment Co., 243 Ala. 83, 8 So.2d 573; Ellis v. W. A. Handley Mfg. Co., 214 Ala. 539, 108 So. 343; Dowling v. Texas Co., 248 Ala. 96, 26 So.2d 590.

A pertinent statement of like import is found in State v. Pullman Standard Car Mfg. Co., 235 Ala. 493, 498, 179 So. 541, 544, 117 A.L.R. 498, where the court made the following observation: "We think that the lawmakers meant that the difference between the basis of the calculation between domestic and foreign corporations was that as to the former it should be computed on all its capital stock, and as to the latter it should be on so much of its capital or other funds as is used in operating its business in Alabama."

On the basis of the foregoing interpretation, the court has held that the following items are to be included in the computation of the actual amount of capital employed: The value of the plant, regardless of the mortgage on same, Ellis v. W. A. Handley Mfg. Co., supra; the tangible property employed in its office in the State of Alabama, Penn Mutual Life Ins. Co. v. State, 223 Ala. 332, 135 So. 346; nitrate (commodity of sale) imported into Alabama by corporation and stored there, State v. Anglo-Chilean Nitrate Sales Corp., 225 Ala. 141, 142 So. 87; a sum represented by one half of the total annual rent for a building, and capital represented by bills receivable which arose from its Alabama operations, State v. Pullman-Standard Car Mfg. Co., supra; real estate, plant and equipment used by taxpayer regardless of ownership, Consolidated Coal Co. v. State, supra; sums expended in erecting a plant in Alabama, Hollingsworth & Whitney Co. v. State, supra.

And the following items are to be excluded: Notes for premiums due by Alabama residents to an insurance company, Penn Mutual Life Ins. Co. v. State, supra; policy loans made by an insurance company to its Alabama policyholders, Penn Mutual Life Ins. Co. v. State, supra; Alabama bonds owned by a foreign insurance company and not allocated to its business in Alabama, Penn Mutual Life Ins. Co. v. State, supra; government and other bonds owned by a foreign insurance company, Penn Mutual Ins. Co. v. State, supra; loans made to Alabama owners of investment certificates representing withdrawals of part of surrender value, Investors' Syndicate v. State, 227 Ala, 216, 149 So. 83; cash on deposit in Alabama banks in transit

to company's home office representing installment payments on Alabama real estate mortgages, Investors' Syndicate v. State, supra.

While admittedly these decisions have not set up a complete index to all items which are to be included as actual amount of capital employed in Alabama, the holdings do present a pattern which indicates that the governing principle of law is to the effect that all assets which have at least a legal situs in Alabama, which are used in Alabama by the foreign corporation in the exercise of its corporate functions, are to be considered as the determining factor. Certainly, to stay within the concepts of our decisions, the assets must be "used" or "employed" in the Alabama operations, and not merely "affect" the Alabama operations.

■ The Department of Revenue has based its assessment on a formula which in effect says that the Alabama payrolls and premiums bear the same average relationship to the total payrolls and premiums of the corporation as the actual amount of capital employed in Alabama bears to the total capital of the corporation. Such a formula, we believe, shows little more than what the words import, namely, the relation of the Alabama payrolls and premiums to the total payrolls and premiums. We fail to find any reasonable or just relationship between these percentages and the actual amount of capital employed in Alabama, when considered from the standpoint of the precise definitions given to it by our decisions.

■ Admittedly, the Department of Revenue has power and discretion to fix the amount of this tax within the ambit of the taxable area defined by the statute, and absolute exactness is not required. Butler Bros. v. McColgan, 315 U.S. 501, 62 S.Ct. 701, 86 L.Ed. 991; International Harvester Co. v. Evatt, 329 U.S. 416, 67 S.Ct. 444, 91 L.Ed. 390. But the Department must stay within the confines of the constitutional and statutory mandates. International Paper Co. v. Curry, 243 Ala. 228, 9 So.2d 8; Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446. The basis of this tax is therein clearly defined to be the "actual amount of capital employed in

Alabama," and our decisions have given that definition a fixed interpretation. The use of an illusory formula by the Department, which has no tendency to show the amount of this basis, results in an unconstitutional delegation—or more accurately, usurpation—of legislative authority. This would be but allowing the Department to fix its own standards different from those of the statute, which might have the result of operating differently in fixing the tax as regards each subject corporation. This is not constitutionally permissible. Phenix City v. Alabama Power Co., 239 Ala. 547, 195 So. 894; Panama Refining Co. v. Ryan, supra.

We find no error in the ruling below. Affirmed.

LIVINGSTON, C. J., and BROWN and STAKELY, JJ., concur.