## CITY OF WILMINGTON v. RICAUD.

(Circuit Court of Appeals, Fourth Circuit. November 1, 1898.)

### No. 268.

1. TAXATION—ERRONEOUS LISTING OF PROPERTY BY CORPORATION—ESTOPPEL.
   The action of the cashier of a national bank in giving in to the officers of the city for taxation against the bank a number of the shares of its stock, taxable under the laws of the state to the stockholders, does not estop a receiver subsequently appointed for the bank, but before the tax is paid, from setting up the mistake.

2. SAME—ACTION TO RECOVER TAX PAID.
   Under a statute of North Carolina which prohibits the issuance of an injunction to restrain the collection of any tax, and requires the payment of all taxes levied, but authorizes the bringing of an action therefor after demand, and their recovery back, if found for any reason invalid or excessive, the fact that a board is provided for the correction of mistakes in tax lists does not exclude the right of action to recover a tax paid, on the ground that the property was listed by mistake.

In Error to the Circuit Court of the United States for the Eastern District of North Carolina.

This case comes up on writ of error from the circuit court of the United States for the Eastern district of North Carolina. The action was at law, and was by stipulation heard by the court without the intervention of a jury. The court below found for the plaintiff, and the case is here on

assignments of error. No bill of exceptions is in the record. As the errors charged are errors of law on the face of the record (Young v. Martin, 8 Wall. 354) such bill is not necessary.

The First National Bank of Wilmington was totally insolvent in June, 1891. The insolvency was declared 24th November, 1891, and on the next day W. S. O'B. Robinson was appointed receiver by the comptroller of the currency. He acted as such receiver until 31st December, 1895, when he resigned, and A. G. Ricaud was appointed as his successor. In June, 1891, one H. M. Bowden, cashier of the bank, went before the board of tax listers or assessors of the city of Wilmington for the purpose of listing the taxable property of the bank. He included in this taxable property 1,096 shares of the capital stock, which was thereupon assessed, after making certain deductions as provided by law, at $55,105, and upon this was levied a tax of 1½ per cent., amounting to $826.58. The bank did not own any of its capital stock; indeed, could not be the owner of its own stock. Rev. St. U. S. § 5201. But the shares so listed were the property of shareholders residents in said city of Wilmington.

The law of the state of North Carolina on this subject is as follows (Act 1891, c. 326, § 42): "That stockholders in every bank shall be assessed on the value of the shares in the city where the bank is located for the purpose of taxation for the state and shall be listed in the name of the corporation by the cashier and the tax due the state shall be paid direct to the state treasurer, and that the owners of shares in any bank shall list the value of their respective shares in the county, town, precinct, village or city where they reside for the purpose of county and school taxation."

The capital stock of the bank consisted of 2,500 shares, of the par value of $100 each, of which residents of Wilmington owned 1,096 shares. The receiver (Robinson) refused to pay this tax. Thereupon levy was threatened upon the real estate of the bank, and on 10th June, 1896, the receiver paid the tax under protest. He then brought this suit for the recovery of the money so paid.

The law of North Carolina on this subject is as follows: "That no injunction shall be granted by any court or judge in this state to restrain the collection of any tax or any part thereof hereafter levied, nor to restrain the sale of any property for the non-payment of any such tax, * * * but in every case the person or persons claiming any tax or any part thereof, to be for any reason invalid * * * who shall pay the same to the tax collector or other proper authority in all respects as though it was legal and valid, such person may, at any time, * * * after such payment, demand the same * * * from the treasurer of the state or of the county, city or town for the benefit or under the authority or by the request of which the same was levied, and if the same shall not be refunded * * * may sue such county, city or town for the amount so demanded, * * * and if upon the trial it shall be determined that such tax or any part thereof was levied or assessed for an illegal or unauthorized purpose or was for any reason invalid or excessive, judgment shall be rendered therefor, with interest." The laws of North Carolina provide the means of correcting mistakes made in listing property for taxation. Laws 1891, c. 326, § 25. The board of assessors meet on the second Monday in July, and rectify the tax list and valuation reported to them. This power does not preclude the relief provided in the same chapter, quoted above.

Suit having been brought, the case was submitted to the judge without a jury, and he found for the plaintiff.

H. McClammy, for plaintiff in error.

E. K. Bryan, for defendant in error.

Before SIMONTON, Circuit Judge, and MORRIS and BRAWLEY, District Judges.

SIMONTON, Circuit Judge (after stating the facts). It is very clear that there was a grave mistake made in the matter of listing

these shares. The bank did not own one of them. Under the law of North Carolina, it was not the duty of the bank to list them. It was the express duty of each shareholder to list his own shares. Non constat, from anything appearing in the record, that each shareholder did not do his duty in this regard, and the presumption is that he did. The cashier had no right to list these shares in the name of the bank, and he, to say the least, was in gross error when he did so. The city clerk labored under grave mistake when he accepted it. The consequences of the mistake are that the general funds of the bank have been used towards the exoneration of a part of the shareholders, to the detriment not only of the other shareholders, but to the loss of the creditors of this insolvent corporation. The immediate result of the mistake is that the city of Wilmington is in possession of this money.

The only question in the case is, is the receiver estopped from setting up this mistake? Evidently the law in North Carolina recognizes that a mistake can be made in listing property for taxation. And the taxpayer who, or whose agent, has made the mistake is not estopped from showing it. This is shown by the provision of the law above quoted, under which mistakes can be corrected and tax lists verified. Under the law of Massachusetts the bank itself would not have been estopped. Dunnell Mfg. Co. v. Inhabitants of Pawtucket, 73 Mass. 277. In this case a manufacturing corporation was taxed in the town in which its real estate was situate, not only for such real estate and machinery, but also for all its stock in trade and other personal property. Under the law it was liable for the tax on the real estate and machinery, but its personal property was assessed in the tax on the shares in the company. The clerk of the corporation, not knowing this, or disregarding it, sent in a statement of its taxable property,—all of its assets,—and it was contended that the corporation was estopped from denying it. The court held otherwise, and that the corporation could recover back the excess paid. The general principle is stated in City of Charlestown v. County Com'rs of Middlesex, 109 Mass. 270. "One who, by mistake of his rights, returns to the assessors as liable for taxation a list of property which by law is exempt, is not thereby estopped to claim an abatement of the tax." Judge Cooley, in his work on Taxation (page 360), states this as the general doctrine, although some of the cases do not seem to go so far.

The mistake of the cashier should not estop the bank. He was the agent of the bank to list its property for taxation. He had no authority or semblance of authority to list as its property the shares of the Wilmington stockholders, nor to assume for the bank the payment of their tax out of the bank's funds. The law of the state of North Carolina providing that state taxes should be paid by the bank, but that municipal taxes should be paid by shareholders in the municipality of their residence, laid down a rule of public policy.

Even were the bank estopped by the action of the cashier, the receiver would not be estopped. The receiver is appointed for the benefit of creditors. He takes the property in trust for creditors. Scott v. Armstrong, 146 U. S. 499, 13 Sup. Ct. 148. He must protect the

interest of the creditors. The cashier was not his agent, nor would the representations of the cashier bind him. It is to be remembered that it was not the bank that finally paid the tax, but the receiver, who, acting for the creditors, paid the tax under protest to prevent the sale of real estate in his hands. The receiver succeeds to the rights of the creditors as well as to the rights of the insolvent bank. Beach, Rec. § 450.

The counsel for the appellant urges upon this court that the appellee had his remedy under the laws of North Carolina, and a mode of correcting the mistake provided for him. But evidently the legislature did not consider the action of the commissioners final, in correcting or refusing to correct a mistake, for they give a right of action to recover back money illegally or irregularly paid, or "if the tax or any part thereof was levied or assessed for an illegal or unauthorized purpose, or was, for any reason, invalid or excessive."

So, also, he presses on this court a line of cases, of which Mariot v. Hampton, 7 Term R. 269, is the leading case, which holds that, after the payment of money under legal process, bare protest at the time of payment will not justify a recovery of it back. It would seem, however, that it was for the purpose of mitigating this harsh rule that the statute of North Carolina was passed giving a right of action in such cases, and, at the same time, taking away the remedy of injunction to prevent the enforcement of the illegal tax. But in the present case the receiver paid the money as the only course left open to him, and entered his protest as notice that he would avail himself of the right of action to recover it back, secured to him by the state statute. No error appears in the circuit court decree. It is affirmed.