## AIR-WAY ELECTRIC APPLIANCE CORPORATION v. ARCHER, State Treasurer et al.

(District Court, S. D. Ohio, E. D. December 8, 1922.)

No. 193.

**1. Taxation ⬯480—On review by state tax commission of its own decision, all members must take part.**

On a proper application to a state tax commission to review a decision made by it, the applicant is entitled with judgment of the commission as such, in which it is the duty of each member to take part, and not merely to the judgment of its chairman.

**2. Taxation ⬯490—State tax commission held to have power to correct erroneous assessment against corporation.**

Gen. Code Ohio, § 5517, providing that any determination, finding, or order of the state tax commission may be reviewed and corrected by the commission on application of a party interested, which must be filed within 60 days after the finding is certified, does not make an order fixing the amount of a tax against a corporation final after the lapse of 60 days, or deprive the commission of jurisdiction to review it, especially in view of Act May 20, 1915 (106 Ohio Laws, p. 425), which authorizes the commission, "whenever" it finds that a tax, assessment, or charge was erroneously charged, to make and certify the proper correction.

**3. Taxation ⬯608(5)—Relief may be granted against excessive tax, though the result of mistake or inadvertence.**

That a tax commission, through mistake or inadvertence, failed to apply the proper rule in computing a tax, is no reason for denying relief from an excessive charge.

**4. Commerce ⬯74—Computation of excise tax under state statute held to impose burden in interstate commerce.**

Under a state statute providing for the levy of an excise tax on foreign corporations doing business in the state, assessed on such proportion of their authorized capital stock as represents the property owned and used and the business done in the state, where a manufacturing corporation has all of its property in the state, where it sells its product, some to residents of the state, but the greater part to purchasers residing in other states, including the latter sales in computing the tax imposes a direct and substantial burden on interstate commerce, and is unauthorized and unlawful.

**5. Constitutional law ⬯229(1)—State tax statute held not invalid, as discriminating against foreign corporations.**

A foreign corporation, entering a state to do business, has not ground of complaint because, under the laws of the state, the excise tax imposed on it is computed on its authorized capital stock, while on domestic corporations it is computed on the issued stock, since, if its authorized capital is excessive, it was by its voluntary act, and the remedy is in its own hands.

In Equity. Suit by the Air-Way Electric Appliance Corporation against R. W. Archer, Treasurer of the State of Ohio, and others. On motion for temporary injunction. Granted.

Judgment reversed 266 U. S. 71, 45 S. Ct. 12, 69 L. Ed. ——.

Tracy, Chapman & Welles, of Toledo, Ohio, and Vorys, Sater, Seymour & Pease, of Columbus, Ohio, for plaintiff.

John G. Price, of Columbus, Ohio, Ray Martin, of Cleveland, Ohio, and John M. Parks, of Painesville, Ohio, for defendants.

Before DONAHUE, Circuit Judge, and SATER and PECK, District Judges.

SATER, District Judge. For reasons stated in our former opinion (279 F. 878), the conclusion was reached that the statute under which the tax in question was levied is constitutional. We suggested that, if any error intervened in the calculation of the tax, the plaintiff should endeavor to secure a correction of such error by the tax commission, and to that end the further consideration of the case was continued pending the action of the commission on plaintiff's application. In pursuance of our suggestion the plaintiff filed with the tax commission on February 27 an application for rehearing and correction of the amount of tax charged against it. On March 27 the Supreme Court of the United States, in Hump Hairpin Mfg. Co. v. Emmerson, 258 U. S. 290, 42 S. Ct. 305, 66 L. Ed. 622, held that under the facts of that case an Illinois statute, similar in given respects to that of Ohio, does not conflict with any provision of the federal Constitution. In that case, as in this, it appeared that all the property of the complaining corpora-

tion was located in the state imposing the tax, that all its manufacturing was done in such state, that all contracts for the sale of goods were approved at the home office within such state, and that there was an honest purpose on the part of the state to differentiate intrastate from interstate business, and to use the former only in determining the amount of tax to be paid. In the light, therefore, of the above-mentioned decision of the Supreme Court, it is unnecessary for us. to discuss further in this opinion the constitutionality of the Ohio statute.

[1] In view of the terms of section 5517, G. C. Ohio (shown, in so far as pertinent, in the margin),[1] the tax commission dismissed plaintiff's application, on the ground of want of jurisdiction to entertain the same, because it had not been filed within 60 days from the certification of the tax to the auditor of state. It appeared at the original hearing herein, and still appears from the record, that prior to the commencement of this action plaintiff had complained of the assessment against it by letter to the commission and orally to its chairman, and had requested the privilege of so amending its return to that body as to show the actual facts as to the business done by it and the necessity for a correction of the assessment to conform thereto. Its request was denied by the chairman, but not by the commission. If it be conceded that the commission's ruling on plaintiff's application of February 27 is correct, nevertheless its original application had never been disposed of, and had undoubtedly been pending all the while before the commission. Such application was perhaps less formal than the statute contemplates, but no objection was made to its form. On the contrary, it was treated as sufficient in that respect. Its dismissal by the chairman on its merits was unavailing. On that application the plaintiff was entitled to the judg-

ment of the tax commission as such, and not merely to that of its chairman. McCortle v. Bates, 29 Ohio St. 419, 23 Am. Rep. 758; Grand Island & N. W. R. Co. v. Baker, 6 Wyo. 369, 45 P. 494, 34 L. R. A. 835, 71 Am. St. Rep. 926, 951; Schumm v. Seymour, 24 N. J. Eq. 143, 152; sections 16, 17 and 19, 102 O. L. 226 (sections 1465—14, 1465—15, 1465—17, G. C. Ohio); sections 7, 4, 19, 102 O. L. 224, 226 (sections 1465—6, 1465—4, 1465—17, G.. C. Ohio). By clear import of the law the duty is cast upon each member of the commission to examine into the law and the facts of each case before it, quite as fully as each judge of a court consisting of a plurality of members is required, honestly performing his duty, to examine the law and the facts of every case before such court for decision. The General Assembly has conferred on the commission great powers, but it has also guarded the rights of the taxpayers by surrounding hearings by formality and solemnity, almost, if not quite, tantamount to that observed in the trial of cases in a court of record. The taxpayer has a right to the best judgment of the commission as a body, after each member has acquainted himself with the facts of the case, and after the members have freely and fully consulted about and discussed the same. To accord less is a failure to conform to the law. The plaintiff did not insist upon its requested rehearing before the commission sitting as a body. It must be presumed such request would have been granted, had it been pressed.

[2] Nor was the tax commission without jurisdiction to grant a rehearing on plaintiff's later application. It construed section 5517 to mean that jurisdiction is wanting, if the application for a rehearing is not made within 60 days from the date of the certification of the assessment to the state auditor, and that therefore its original decision, charging a $20,000 excise tax, became final. The word "final," as used in that section, does not mean that the commission's decision is exclusive of further inquiry on its part, for by the terms of section 5524 that body, if it advises and the Attorney General consents, may compromise with the taxpayer and settle any liquidated claim for delinquent taxes, fees, or penalties certified by the commission; nor does it mean that the commission's decision is absolute to the exclusion of judicial inquiry. Sections 5524 and 12075 prohibit such a conclusion. If there was at any time any doubt as to the want of finality

---

[1] Sec. 5517. Any bank, public utility or corporation may be heard by the commission upon the question as to the correctness of any determination, finding or order of the commission after the same has been made. Application to the commission for a review of any determination, finding or order by it made, must be filed within sixty days after the passage of. this act, or within sixty days from the date of certification thereof by the commission to the proper officer. The commission, upon such application, may make such correction in its determination, finding or order, as it may deem proper, and its decision in the matter shall be final. Such correction shall be certified to the proper official, who shall correct his records and duplicates in accordance therewith.

of the commission's decision, it was effectually removed by the later act of the General Assembly, passed May 20, 1915 (106 O. L. 425), to provide for the correction of errors in determining the amount of taxes and other charges due the state. That act, in so far as pertinent, is as follows:

"That whenever any commission, board or officer of the state makes a finding determining the amount of any tax, assessment or charge against any corporation, company, partnership or person, or makes any charge of any tax, assessment or charge against any corporation, company, partnership or person, pursuant to any law of the state imposing such tax, assessment or charge upon such corporation, company, partnership or person, and, upon the application of the corporation, company, partnership or person so charged and an investigation thereof, such commission, board or officer of the state so making such finding or determining or making such charge, finds that such tax, assessment or charge, or any part thereof, was erroneously charged, such commission, board or officer may make such corrections in its determination, findings or charge as shall be proper. Such corrections shall be entered upon the minutes of the proceedings of such commission, board or officer, and certified to the proper officer who shall correct his records and duplicates in accordance therewith."

That statute makes it clear that the commission had jurisdiction and power to grant plaintiff a rehearing and to make correction, if it found the tax assessed, or any part of the same, to be erroneous. When the tax commission dismissed the plaintiff's application of February 27, it not only expressed the views then entertained by it, but also by necessary implication approved the earlier opinion of its chairman. Having finally acted on the tax proceeding before it, the justiciable stage was reached. The question as to the correctness of the tax certified by the commission to the state auditor is therefore properly before this court.

In the case of Hump Hairpin Mfg. Co. v. Emmerson, supra, it was held that the business done by a corporation, similarly situated to the plaintiff in this case, with residents of states other than Illinois, is interstate business, and that a state may not use its taxing power to regulate or burden interstate commerce. However, it was concluded in that case that "at most the assessment, so far as interstate commerce is concerned, is incidental, remote, and unimportant, and it is therefore constitutional."

In the instant case, the amount assessed by the commission upon interstate commerce is not remote, incidental, and unimportant, but, on the contrary, is a substantial sum, levied directly upon the stock representing interstate business. It is wholly unnecessary to consider the power of a state to levy a tax in gross upon a foreign corporation, based upon the company's entire business, both intrastate and interstate, for, as we construe this statute, it was not the purpose and intent of the General Assembly of Ohio to include interstate business as a basis for this levy, but only as a factor in determining the proportion that should be paid upon strictly state business. The purpose and intent of this statute is further discussed later in this opinion.

[3] But, wholly aside from this consideration, it is clear from admitted facts, which were not before the tax commission when the assessment in question was made and certified, that the commission has not applied its own announced rule for the ascertainment of the correct amount of tax to be paid by foreign corporations. The plaintiff is manifestly entitled to the benefit of that rule, and it must be presumed the tax would have been computed in accordance therewith, if the report of plaintiff to the tax commission had correctly and fully disclosed the facts pertaining to its business. That the commission finally failed to do so through mistake or inadvertence is no reason for denying relief from an erroneous charge. Cooley on Taxation, 1447; Charlestown v. County Com'rs, 109 Mass. 270; Dunnell Mfg. Co. v. Inhabitants of Pawtucket, 73 Mass. (7 Gray) 277; City of Wilmington v. Ricaud, 90 F. 214, 32 C. C. A. 580; Brown v. French (C. C.) 80 F. 166.

[4] From the pleadings and the evidence, the amount of plaintiff's authorized common stock represented by property owned and used and business transacted in the state is readily ascertainable. Having regard to the teachings of the Hump Hairpin Manufacturing Company Case, which is necessarily controlling, if the amount of plaintiff's property in Ohio ($458,278.56) plus the amount of its business in Ohio ($70,802.30) be divided by the amount of its property in Ohio ($458,278.56) plus its total business transacted ($250,594.58), the resulting quotient, multiplied by the number of shares of authorized common stock, gives the number of shares (298,520) representing the property owned and used and business transacted in this state. The computa-

tion thus made coincides with the result obtained by the use of the formula specifically set forth at pages 156, 157, in the Ohio Tax Laws compiled by the tax commission in 1920, by the use of which it is said: "The amount of tax to be assessed under the statute may be worked out with mathematical precision." The tax on 298,520 shares at 5 cents per share is $14,926, the amount which plaintiff should pay, if there be no valid ground for relief from any part of the same.

It is true that, following the above-mentioned formula promulgated by the tax commission is a statement (page 157) expressing the conclusion reached by the Attorney General of Ohio in 1915 (Attorney General's Report, 1915, p. 460), that "the operation of a factory in Ohio, by a foreign corporation having its principal place of business in another state constitutes 'doing business' in Ohio, regardless of where the products of such factory are sold or transported; and it is reasonable and lawful under section 5502 to measure the volume of such business by sales of manufactured articles, whether such sales otherwise represent interstate commerce or not." Section 5502 relates to the determination by the tax commission of the proportion of the authorized capital stock of a foreign corporation represented by its property and business in the state and the certification of the same to the auditor of state. If, in determining the amount of the state excise tax, the use made of the amount of sales representing interstate business is such that the tax affects interstate commerce so directly and immediately as to constitute a genuine and substantial burden or restraint upon such commerce, the view expressed in the above-quoted passage is under the rule announced in the Hump Hairpin Manufacturing Company Case unusual, and, if the statute here under consideration is in its general operation productive of such a result, it must fail for want of constitutionality. The annual tax assessed against a foreign corporation is, it is true, for the privilege of exercising its franchises in the state; but, the interstate business being a factor in measuring the amount, if the tax be excessive on account of such factor, the net result is the substantial and genuine fettering of such business.

The plaintiff contends that we held in our former opinion a statute constitutional which taxes a domesticated foreign corporation with 400,000 shares of non-par value common stock, of which but 50,485 shares are subscribed, issued, and outstanding, a franchise fee of $20,000, and a domestic corporation, with identically the same number of shares of stock authorized and outstanding, a fee of $2,534.25. The opinion warrants no such conclusion. The plaintiff voluntarily entered the state for the transaction of business. It was chargeable with knowledge that under the Ohio rule, as fixed by legislation and judicial determination (Southern Gum Co. v. Laylin, 66 Ohio St. 578, 64 N. E. 564; State v. Fulton, 98 Ohio St. 350, 121 N. E. 697), the tax exacted of foreign corporations, whether it be the initial or the annual tax for the privilege of exercising their franchises in the state, is not always the same as that imposed on domestic corporations—favors when extended running ordinarily in favor of the latter. The original initial fee exacted of a domestic corporation for the privilege of doing business was assessed on the subscribed or issued and outstanding stock, and has always remained so; whereas, in the case of a foreign corporation, the Act of May 16, 1894 (91 O. L. 272), provided that such corporation, desiring to enter the state for business purposes, should file a statement showing the proportion of its capital stock represented by property owned and used and business transacted in the state, and directed that, from the facts thus reported and any other facts coming to his knowledge bearing upon the question, the secretary of state shall determine the proportion of capital stock represented by its property and business in Ohio and shall charge and collect for the privilege of exercising its franchises in Ohio one-tenth (subsequently changed to three-twentieths) of 1 per cent. upon the proportion of its authorized capital stock represented by property owned and used and business transacted in Ohio, "being the same fee required to be paid by corporations formed under the laws of Ohio."

The above provisions remained in all the amendments to that act (93 O. L. 225; 94 O. L. 225; 95 O. L. 539; 96 O. L. 496), until the General Code was adopted in 1911, when the above-quoted words were omitted, for the reason such language amounts to an incorrect statement—it not being true that a foreign corporation in all instances pays the same tax as that exacted of a domestic corporation (State v. Fulton); the divergence between a domestic and a foreign corporation in the amount of the excise tax to be paid being dependent on its holdings within the state and on whether the foreign

corporation is excessively capitalized. The Willis Law, enacted April 11, 1902 (sections 5502, 5503, G. C., being parts of it), imposed an annual in addition to the initial tax on foreign corporations to the amount of one-tenth (later increased to three-twentieths) of 1 per cent. upon the proportion of the authorized capital stock of corporations represented by property owned and used and business transacted in Ohio. That act contained no recital that the tax was the same as required of domestic corporations. It was sustained in its entirety as a constitutional statute in the Southern Gum Company Case. In State v. Tomlinson, 99 Ohio St. 233, 238, 124 N. E. 220, the Southern Gum Company Case was cited to the point that in Ohio an excise or franchise tax may be imposed upon foreign corporations is no longer debatable; the only limitation upon the legislative power in that respect being that the tax be reasonable and the operation of the tax be uniform upon all corporations of a class throughout the state. It thus appears that Ohio has consistently adhered to a policy which does not always produce equality as between domestic and foreign corporations in franchise taxation.

The local courts have, however, uniformly held that a statute reasonably interpreted, which directly and substantially by its necessary operation burdens interstate commerce, is invalid, whatever may have been the purpose for which it was enacted, and although the complaining party does both interstate and intrastate business. Castle v. Mason, 91 Ohio St. 296, 307, 110 N. E. 463, Ann. Cas. 1917A, 164; McGuire v. State, 42 Ohio St. 530, 534; Arnold v. Yanders, 56 Ohio St. 417, 421, 47 N. E. 50, 60 Am. St. Rep. 753; Western Union Tel. Co. v. Mayer, 28 Ohio St. 521, 528, et seq. The General Assembly, recognizing that rule in the enactment of the statute here in question (section 8728—11), and showing an honest purpose to differentiate state from interstate business, and to use only the former in determining the amount of the excise tax, exempted interstate business from taxation. There is present no circumstance indicating a purpose or necessary effect in the authorized tax to burden such business. The tax of 5 cents is not assessed on all of a foreign corporation's authorized non-par value stock, nor on all of its property owned and used in Ohio, or on all of its business done therein, but on the fractional part only of its authorized common stock represented by prop-

erty owned and used and business transacted in Ohio, as determined with reference to all the property owned and used and all the business transacted everywhere. The tax is not computed or directly imposed upon business done in, or upon the proceeds of, interstate commerce. The $179,972.28 resulting from interstate business is but one of the factors employed in measuring the portion of authorized common stock upon which an assessment was to be made. The other factors are the value of the property in Ohio and the amount of intrastate business. The plaintiff's mode of transacting its business is such that all of its sales are made in Ohio. This being so, although most of its transactions take on an interstate character, yet all of them contain the elements of a sale which takes place within the state, and represent business done within it; but, on account of its sales of interstate character, the tax is less than it would have been, had shipments been restricted to Ohio. The large tax to which the plaintiff is liable is due to its extensive property holdings in the state and its extravagant capitalization.

[5] Under the statute a domestic corporation having 50,485 shares of common non-par value stock subscribed or issued and outstanding would be taxed $2,524.25. If plaintiff's authorized stock was for that same number of shares, it could be taxed on only 37,637 of them, or to the amount only of $1,881.85. If, under the rule heretofore applied, the plaintiff's authorized common stock was 60,000 shares, its tax would have been $2,238.90; if 80,000 shares, $2,985.20; if 100,000 shares, $3,731.50; if 140,000 shares, $5,224.10. The difference between this last-named sum and what an Ohio domestic corporation, having 50,485 shares subscribed for or issued and outstanding, would have to pay, is almost precisely the sum charged against the Hump Hairpin Manufacturing Company in excess of what that company claimed should be assessed against it (see 293 Ill. 387, 127 N. E. 746), which excess was held not to burden interstate commerce unlawfully. The plaintiff unwisely authorized common stock to the extent of about eight times the number of shares sold; but, had the capital authorized been fairly such as its present and its reasonably near future needs would probably require, its tax would either have been less than that of a domestic corporation of like capital which had disposed of, or had obtained subscriptions for, its entire stock, or would not, in any event, have ma-

3 F.(2d)—43

terially exceeded that chargeable to a domestic corporation which had stock subscribed for or issued and outstanding to the amount only of 50,485 shares.

The plaintiff asks the court to relieve it from an anomalous situation which it voluntarily and improvidently created. The court will not hold an inspection law unconstitutional which in occasional years yields an income considerably in excess of the cost of inspection. Castle v. Mason, 91 Ohio St. 296, 305, 110 N. E. 463, Ann. Cas. 1917A, 164; Cleveland Refining Co. v. Phipps, 277 F. 463, 466; Foote v. Stanley, 232 U. S. 494, 504, 34 S. Ct. 377, 58 L. Ed. 698. The same rule forbids declaring a tax law invalid merely because some corporation, on account of its extravagant capitalization, suffers temporarily self-imposed hardship, of which it may in the future relieve itself, if it so desires, by a reduction of its authorized capital. This doctrine finds support in L. & N. R. Co. v. State, 201 Ala. 317, 318, 78 So. 93, 94, as follows:

"We are not unmindful of the rule of the United States Supreme Court that, in determining the validity of a statute, it will not be confined to form, but will go to the substance of the act and condemn it, if in the ordinary enforcement and operation thereof it results in a violation of the Constitution, though unobjectionable in form. * * * There can be little or no discrimination between domestic and foreign corporations in the general and ordinary operation of our statute. Of course, there may be instances when the burden will fall heavier on the one than the other, in case a foreign and a domestic corporation may be both undercapitalized, as well as rare cases when the burden may fall heavier upon a domestic corporation which is overcapitalized; but in dealing with the vitality of our statutes, and especially when it also involves the life of certain sections of our organic law, we must measure them by general conditions rather than obsolete or exceptional instances."

After the above was written, our attention was called to People v. Walsh, 202 App. Div. 651, 195 N. Y. S. 184. The case, on account of the difference in local statutes, is without application. The New York statute employs the term "capital stock employed," and the courts of that state have construed "capital stock" to mean "capital," so that the tax is determined with reference to the capital employed. Under section 8728—11 here un-

der consideration, the tax by express language is to be computed at "five cents per share upon the proportion of the number of shares of authorized common stock, represented by property owned and used and business transacted in this state." The authorized capital stock, whether it be common or preferred, or both, beginning with the earliest legislation on the subject, has always been the basis for computing the excise tax (whether initial or annual) to be assessed against a foreign corporation. See G. C. Ohio, §§ 183, 184, 185, 5502, and 5503, as well as section 8728—11.

A majority of the court concurs in the foregoing conclusions, and that the correct amount of tax chargeable against the plaintiff is $14,926. An order may be taken accordingly.