83 So.2d 42

### ALABAMA TEXTILE PRODUCTS CORP.

v.

### STATE of Alabama.

### 3 Div. 726.

Supreme Court of Alabama.

Sept. 15, 1955.

Rehearing Denied Nov. 10, 1955.

Albrittons & Rankin, Andalusia, for appellant.

John Patterson, Atty. Gen., Willard W. Livingston and H. Grady Tiller, Asst. Attys. Gen., for appellee.

Jack Crenshaw, Montgomery, amicus curiae.

MERRILL, Justice.

This is an appeal from a decree of the Circuit Court of Montgomery County, in Equity, sustaining demurrers to appellant's bill of complaint to the bill as a whole and to the various aspects of the bill. The bill presented an appeal under § 140, Title 51, Code of 1940, from a final assessment by the State Department of Revenue of franchise

taxes against the appellant for the tax year 1952.

The excellent opinion of Judge Jones, which precedes the decree, is full, comprehensive and complete, and demonstrates that it is the result of much thought and research. Since we are affirming the decree, any opinion by us would cite and discuss most of the cases considered by Judge Jones in his opinion. We, therefore, quote and adopt his opinion on the same questions presented here, but we omit the portion of it which deals with the alleged violation of the Fifth and Fourteenth Amendments to the Constitution of the United States. Those aspects of the decree are not argued by appellant in this court and are not considered by us. The opinion of Judge Jones, with the noted exceptions, follows:

"The Alabama Textile Products Corporation, a corporation, will hereinafter be referred to as 'the appellant' and the State of Alabama, one of the appellees in this cause, will hereinafter be referred to as either 'the appellee' or 'the State.'

"The appellant is a Delaware corporation, same having been chartered under the laws of said State on March 29, 1929 and qualified to do business in the State of Alabama on March 31, 1929, and has continuously done business as a foreign corporation in the state of Alabama since said time.

"This case arose in the Department of Revenue of the State of Alabama where, after due notice and a contest therein by the appellant, a final assessment was made and entered by the State Department of Revenue against the appellant for franchise tax in the amount of $10,506.61 and the appellant, within the time and in the manner provided by law, duly appealed from said final assessment to this Court.

"Within the time required by law, the appellant duly filed its bill of complaint in this Court, making as parties appellee thereto Joe M. Edwards, as Commissioner of Revenue for the State of Alabama, the State Department of Revenue of the State of Alabama and the State of Alabama, and attached to the bill of complaint a copy of its franchise tax return for the year 1952.

"The bill of complaint alleges that the appellant was organized and granted its charter on March 29, 1929 under the laws of the State of Delaware and was duly qualified to do business in the State of Alabama on March 31, 1929; that its principal place of business in Alabama was and is Andalusia, Alabama, and that the corporation was and is engaged in the manufacturing of garments such as shirts and pajamas; that it was engaged in business during the franchise tax year 1952 in this State and also in the State of Florida.

"That on January 14, 1954 the Department of Revenue of the State of Alabama made and entered against the appellant a final franchise tax assessment for the tax year 1952 in the amount of $10,506.61; that the appellant, within the time and in the manner provided by law, duly perfected its appeal therefrom to this Court and within the time required by law, filed its bill of complaint herein; that the appellees and each of them, separately and severally, interposed demurrer to the bill of complaint as a whole and to the several and separate aspects thereof.

"The parties to this litigation appeared before the Court and orally argued the demurrer and later filed with the Court written briefs, and the matter is now before the Court for decree on said demurrer.

"The Commissioner and the State Department of Revenue as Appellees.

"Joe M. Edwards, as Commissioner of Revenue for the State of Alabama and the State Department of Revenue of the State of Alabama were each made parties appellee to the bill of complaint, and each interposed demurrer thereto. It is the opinion of the Court that the demurrer of these appellees should be sustained for they nor either of them are proper or necessary parties appellee to said suit. Section 140, Title 51, Code of Alabama 1940; State v. National Cash Credit Association, 224 Ala. 629, 141 So. 541, and Birmingham Vending Co. v. State, 251 Ala. 584, 38 So.2d 876.

## "What Is Capital?

"From the oral argument before this Court, as well as the written brief and argument of the appellant filed with the Court, it appears that its main contention was that 'capital' should be redefined so as to include only the issued and outstanding capital stock, surplus and undivided profits and long term bonds maturing more than one year from accounting date, and that the actual amount of capital employed in Alabama could not exceed the aggregate sum thereof. With this contention, the Court cannot agree.

"The tax here in question is a constitutional tax provided for by Section 232 of the Constitution of Alabama 1901 which, as to a foreign corporation, provides, so far as here pertinent, as follows:

"'The legislature shall, by general law, provide for the payment to the State of Alabama of a franchise tax by such corporation, but such franchise tax shall be based on the actual amount of capital employed in this state.'"

"Section 229 of said Constitution provides that the Legislature shall levy a franchise tax against domestic corporations and, so far as here pertinent, provides as follows:

"'The legislature shall, by general law, provide for the payment to the State of Alabama of a franchise tax by corporations organized under the laws of this state, which shall be in proportion to the amount of capital stock; * * *.'"

"In compliance with the mandate of these constitutional provisions, the Legislature enacted Laws levying a franchise tax against domestic corporations and a franchise tax against foreign corporations. Section 347 of Title 51, Code of Alabama 1940, levies a franchise tax against domestic corporations and said Section is as follows:

"'Every corporation organized under the laws of this state, except strictly benevolent, educational or religious corporations, shall pay annually to the state an annual franchise tax of two dollars on each one thousand dollars of its capital stock.'"

"Section 348 of Title 51, Code of Alabama 1940, levies a franchise tax against foreign corporations and same, so far as here pertinent, is as follows:

"'Every corporation organized under the laws of any other state, nation or territory and doing business in this state, except strictly benevolent, educational or religious corporations, shall pay annually to the state an annual franchise tax of two dollars on each one thousand dollars of the actual amount of capital employed in this state.'"

"It will be observed that the rate provided for by the Legislature for the tax against the domestic and against the foreign corporation is the same, namely, two dollars per thousand, but that with respect to the domestic corporation the tax is measured by the capital stock; whereas, with respect to the foreign corporation the tax is measured by 'the actual amount of capital employed in this state.' What does that expression mean?

"The latest case to go before the Supreme Court of this State involving the franchise tax on foreign corporations is that of State v. Travelers Ins. Co., 256 Ala. 61, 53 So.2d 745, 750. In that case the Supreme Court of Alabama, in language too clear for misunderstanding, stated:

"'The basis of this tax is therein [the constitutional and statutory provisions] clearly defined to be the "actual amount of capital employed in Alabama," and our decisions have given that definition a fixed interpretation.'"

"From this quotation it appears that the Supreme Court regarded the expression '"actual amount of capital employed in Alabama"' as being itself the definition of what constitutes the measure of the tax. Furthermore, since their decisions have given said expression a fixed interpretation, it appears that there only remains to determine what that fixed interpretation is.

"Mr. Justice Simpson, the writer of said opinion, defined the expression as follows:

" 'We have said the words "actual amount of capital employed" are used in their natural and ordinary significance and in the general accepted sense they have application to the properties and monies set apart from other uses and invested or employed in the operation of the business in the state with the view to income or profit therefrom. State v. Burchfield Bros., 211 Ala. 30, 99 So. 198.' "

"After referring to the case of Louisville & N. R. Co. v. State, 201 Ala. 317, 78 So. 93, an opinion written by Mr. Chief Justice Anderson, and calling attention to the fact that he relied upon and quoted approvingly from the cases of St. Louis Southwestern R. Co. v. State of Arkansas ex rel. Norwood, 235 U.S. 350, 35 S.Ct. 99, 59 L.Ed. 265, and Postal Telegraph Cable Co. v. Adams, 155 U.S. 688, 15 S.Ct. 268, 360 L.Ed. 311, Mr. Justice Simpson stated:

" 'We think it manifest the italicized portions evinced the opinion of our court as then constituted that the actual amount of capital employed in the state by a foreign corporation was to be based on the property of the corporation that is within the state and used in business transacted within the state. Subsequent decisions point to the same conclusion.' "

"It will be observed that Mr. Justice Simpson, in the Travelers Ins. Co. case, supra, quoted from the case of Consolidated Coal Co. v. State, 236 Ala. 489, 183 So. 650, 651, as follows:

" ' "The franchise tax upon foreign corporations authorized by Section 232 of the Constitution of Alabama 'based on the actual amount of capital employed in this state,' and levied by the General Revenue Law of 1935 (Acts of 1935, p. 387, Sec. 318) upon foreign corporations 'doing business in this State,' is an excise tax for the privilege of exercising corporate functions in Alabama, measured by the actual amount of capital employed in Alabama in the exercise of such corporate functions, capital employed in a business for which the corporation was created and has its existence as a corporate entity." ' "

"In the Travelers Ins. Co. case, supra, the Court also quoted approvingly from the case of State v. Pullman-Standard Car Mfg. Co., 235 Ala. 493, 498, 179 So. 541, 544, 117 A.L.R. 498, as follows:

" ' "We think that the lawmakers meant that the difference between the basis of the calculation between domestic and foreign corporations was that as to the former it should be computed on all its capital stock, and as to the latter it should be on so much of its capital or other funds as is used in operating its business in Alabama." ' "

"The thought expressed in the Pullman-Standard Car Mfg. Co. case, supra, is also found expressed in the case of Ellis v. W. A. Handley Mfg. Co., 214 Ala. 539, 108 So. 343, 344, in language as follows:

" 'We are, of course, aware, of the fact that in some instances "capital" and "capital stock" are used interchangeably, but such cannot be the case here, as section 229 of the Constitution, in dealing with domestic corporations, expressly bases the franchise tax on the "capital stock," while section 232 bases the franchise tax on foreign corporations on the "actual amount of capital employed in this state.' "

"It will be observed that the W. A. Handley case, supra also holds that the indebtedness owed by the corporation and secured by mortgage is not deductible from the value of the assets of the corporation and that the value of the franchise or right of the corporation doing business in this State in its corporate name is the value of the property owned by the corporation. The Court, in that regard, remarked as follows:

" 'Now in ascertaining the sum that might be leviable on the property listed and employed in the business of this appellee, we know of no law providing

for or authorizing a deduction for incumbrances. In other words, the value of the plant, regardless of the mortgage on same, should be assessed for purposes of direct taxation, and, while this is a franchise and not a direct tax, the value fixed on the property employed can, and should be, taken as a basis for fixing the franchise tax.'"

"Referring again to the Travelers Ins. Co. case, supra, it will be noted that the Court held that certain items of property were included in the measure of the tax, and stated as follows:

"'On the basis of the foregoing interpretation, the court has held that the following items are to be included in the computation of the actual amount of capital employed: The value of the plant, regardless of the mortgage on same, Ellis v. W. A. Handley Mfg. Co., supra; the tangible property employed in its office in the State of Alabama, Penn Mut. Life Ins. Co. v. State, 223 Ala. 332, 135 So. 346; nitrate (commodity of sale) imported into Alabama by corporation and stored there, State v. Anglo-Chilean Nitrate Sales Corp., 225 Ala. 141, 142 So. 87; a sum represented by one half [½] of the total annual rent for a building, and capital represented by bills receivable, which arose from its Alabama operations, State v. Pullman-Standard Car Mfg. Co., supra; real estate, plant and equipment used by taxpayer regardless of ownership, Consolidated Coal Co. v. State, supra; sums expended in erecting a plant in Alabama, Hollingsworth & Whitney Co. v. State, supra [241 Ala. 96, 1 So.2d 387].'"

"Then the Court stated the governing principle of law that applies in franchise tax cases against foreign corporations as follows:

"'While admittedly these decisions have not set up a complete index to all items which are to be included as actual amount of capital employed in Alabama, the holdings do present a pattern which indicates that the govern-

ing principle of law is to the effect that all assets which have at least a legal situs in Alabama, which are used in Alabama by the foreign corporation in the exercise of its corporate functions, are to be considered as the determining factor. Certainly, to stay within the concepts of our decisions, the assets must be "used" or "employed" in the Alabama operations, and not merely "affect" the Alabama operations.'"

"It is here made plain that the governing principle of law is that all assets which have at least a legal situs in Alabama and used by the foreign corporation in this State are to be considered as the determining factor. This is certainly in line with the holdings of many of the cases that have gone to the Supreme Court of this State, reaching as far back as the case of Louisville & N. R. Co. v. State, 201 Ala. 317, 78 So. 93, 94; Id., 1918, 248 U.S. 533, 39 S.Ct. 18, 63 L.Ed. 406, where the Court stated:

"'In the first place, it is a franchise, and not a property tax, and the fact that the amount, as to foreign corporations, is ascertainable proportionate to the amount of property actually employed within the jurisdiction of the state of Alabama does not convert it into a direct or ad valorem tax * * *.'"

"Reference is made in the case just quoted from, written by Mr. Chief Justice Anderson, to the debate in the Constitutional Convention where Mr. Kyle offered an amendment to what is now Section 232, substituting for the words therein '"in proportion to the amount of its capital stock"' the following: '"shall be based on the actual amount of capital employed in this state."' In the course of the remarks made by Mr. Kyle, he stated: 'So this reaches the matter and makes it the property in possession of the state.' From this remark it must be adduced that Mr. Kyle understood that the franchise tax on foreign corporations would be measured by the actual amount of capital employed in this State and that it

would not reach the capital of the corporation employed in another state. Furthermore, the Arkansas and the Adams cases quoted approvingly by Mr. Chief Justice Anderson in said opinion also show that property or the value of the assets of the corporation situated and used within the State were to constitute the measuring rod for the franchise tax here in question.

"In the Louisville & N. R. Co. case, supra, Mr. Chief Justice Anderson stated that the franchise tax levied on a foreign corporation was '* * * based upon the amount of "capital actually employed in this state," regardless of the proportion it may bear to the appellant's capital stock; * * *.'

"Mr. Justice Foster, in the case of Hollingsworth & Whitney Co. v. State, 241 Ala. 96, 1 So.2d 387, 388, had before him questions involving the franchise tax law of this State. It was insisted by the taxpayer that the amount which had been expended at the end of 1939, in construction of the plant and in its various aspects and in appliances used in that connection, did not represent capital of the taxpayer employed in this State under Section 232 of the Constitution and under the franchise tax law then in force. The Supreme Court did not agree. After calling attention to the fact that the tax in question was an excise tax for the privilege of doing business in Alabama and that it was a tax for the privilege of exercising corporate functions and likewise emphasizing the fact that 'the privilege is the subject of taxation, not the business itself', he stated as follows:

"'The tax base is capital of the corporation employed in Alabama. The Constitutional Convention did not seem to wish to limit the franchise tax to such capital only as was employed in doing business. There is no limitation in it as to the manner in which capital shall be employed to be within the tax base. * * *

* * * * * *

"'But when the foreign corporation is doing business in Alabama, then the franchise tax for the privilege of exercising any and all its powers and functions is based on the amount of its capital employed in any way in Alabama, whether in and as a part of its business or not. * * *

"'The privilege is one thing, and the base for the tax upon the exercise of that privilege is another thing. Given an exercise of the privilege to do business, the tax base includes capital in any sort of employment whether a feature of the business or not.

"'* * * The use of capital in the construction of a plant to make ready to carry on its main business is an employment of capital in Alabama. It is not intended as an investment as conceded. It is more than mere ownership. The use of capital in the construction of the plant and facilities is one continuous process, both before and after it is completed and put into operation. It is employed all the while.

"'We agree with the trial court that the several items here in dispute do represent capital employed in this State during 1939, by this appellant, and were properly included in the tax base.'

"In State v. Burchfield Bros., 211 Ala. 30, 99 So. 198, 200, the question was asked: 'Are the words "capital actually employed in the business" the equivalent of the words "net worth of the business," if effect be given to the plain intent of the statute when considered as a whole?' [Citing cases.] They are not.'

"Mr. Chief Justice Livingston, in the case of State v. Jackson Securities & Investment Co., 243 Ala. 83, 8 So.2d 573, 574, stated that: 'The statutes are not of doubtful meaning * * *.' It was also held in that case that the value of the property owned by the corporation and used or employed by it in this State constituted the measure of the tax; that it was the fair and reasonable market value of the term 'value' is defined in Section 1, Title 51, Code of Alabama 1940, and it is there

defined to mean 'the fair and reasonable market value of the taxable property'.

"The Consolidated Coal Co. case, supra, also made it perfectly clear that the franchise tax on a foreign corporation is not a property tax, nor a tax on the privilege of owning property in Alabama, without more, and that the value of property in Alabama may become material in estimating the amount of capital employed in Alabama. I am, therefore, at the conclusion that, as stated in the Travelers Ins. Co. case, supra, the governing principal of law is that all assets which have an actual or a legal situs in Alabama and which are used or employed by the foreign corporation in Alabama in the exercise of any business whatsoever, are to be considered as the determining factor or measure of the tax and that, therefore, the demurrer interposed by the appellee to this phase of the bill should be sustained.

"Intangible Personal Property

"The taxation of tangibles such as land and chattels is no longer fraught with difficulty for they are regarded as being localized at the place where the tangible itself is located for purposes of taxation. However, intangible personal property may and sometimes does present a more difficult problem largely from a jurisdictional standpoint. No state has a right to tax property whether it be tangible or intangible unless it can be said to have a situs in the taxing state. For a state to undertake to tax any class of property, the situs of which is not within the state, is to run afoul of constitutional provisions of due process of law or equal protection of the law. However, this is not to say that intangibles cannot have a situs different from the domicile of its owner. This principle was recently demonstrated by the case of Curry v. McCanless, 307 U.S. 357, 59 S.Ct. 900, 905, 83 L.Ed. 1339. In that case, the question for decision was whether the States of Alabama and Tennessee may each constitutionally impose death taxes upon the transfer of an interest in intangibles held in trust by an Alabama trustee but passing under the will of a beneficiary decedent domiciled in Tennessee; and which of the two states may tax in the event that it is determined that only one state may constitutionally impose the tax. It was held that, under the circumstances of that particular case, both the State of Tennessee and the State of Alabama could constitutionally impose a death tax on the intangibles held by the Alabama trustee. The Supreme Court of the United States discussed in great detail the intangibles and the law governing same. After discussing the rights in tangibles, that is, land and chattels, the Court discussed at considerable length intangibles, and stated, in part, as follows:

" 'Very different considerations, both theoretical and practical, apply to the taxation of intangibles, that is, rights which are not related to physical things. Such rights are but relationships between persons, natural or corporate, which the law recognizes by attaching to them certain sanctions enforceable in courts. The power of government over them and the protection which it gives them cannot be exerted through control of a physical thing. They can be made effective only through control over and protection afforded to those persons whose relationships are the origin of the rights. [Citing cases.] Obviously, as sources of actual or potential wealth —which is an appropriate measure of any tax imposed on ownership or its exercise—they cannot be disassociated from the persons from whose relationships they are derived. These are not in any sense fictions. They are indisputable realities.

" 'The power to tax "is an incident of sovereignty, and is co-extensive with that to which it is an incident. All subjects over which the sovereign power of a state extends, are objects of taxation; but those over which it does not extend, are, upon the soundest principles, exempt from taxation." McCulloch v. [State of] Maryland, 4 Wheat. 316, 429, 4 L.Ed. 579. But this does not mean that the sovereign pow-

er of the state does not extend over intangibles of a domiciled resident because they have no physical location within its territory, or that its power to tax is lost because we may choose to say they are located elsewhere. A jurisdiction which does not depend on physical presence within the state is not lost by declaring that it is absent. From the beginning of our constitutional system control over the person at the place of his domicile and his duty there, common to all citizens, to contribute to the support of government have been deemed to afford an adequate constitutional basis for imposing on him a tax on the use and enjoyment of rights in intangibles measured by their value. Until this moment that jurisdiction has not been thought to depend on any factor other than the domicile of the owner within the taxing state, or to compel the attribution to intangibles of a physical presence within its territory, as though they were chattels, in order to support the tax. [Citing cases.]

" 'In cases where the owner of intangibles confines his activity to the place of his domicile it has been found convenient to substitute a rule for a reason, cf. [People of State of] New York ex rel. Cohn v. Graves, 300 U.S. 308, 313, 57 S.Ct. 466, 467, 81 L.Ed. 666, 108 A.L.R. 721; First Bank Stock Corp. v. [State of] Minnesota, 301 U.S. 234, 241, 57 S.Ct. 677, 680, 81 L.Ed. 1061, 113 A.L.R. 228, by saying that his intangibles are taxed at their situs and not elsewhere, or, perhaps less artificially, by invoking the maxim mobilia sequuntur personam, Blodgett v. Silberman, supra [277 U.S. 1, 48 S.Ct. 410, 72 L.Ed. 749]; Baldwin v. [State of] Missouri, supra [281 U.S. 586, 50 S.Ct. 436, 74 L.Ed. 1056], which means only that it is the identity or association of intangibles with the person of their owner at his domicile which gives jurisdiction to tax. But when the taxpayer extends his activities with respect to his intangibles, so as to avail himself of the protection and benefit of the laws of another state, in such a way as to bring his person or property within the reach of the tax gatherer there, the reason for a single place of taxation no longer obtains, and the rule is not even a workable substitute for the reasons which may exist in any particular case to support the constitutional power of each state concerned to tax. Whether we regard the right of a state to tax as founded on power over the object taxed, as declared by Chief Justice Marshall in McCulloch v. [State of] Maryland, supra, through dominion over tangibles or over persons whose relationships are the source of intangible rights; or on the benefit and protection conferred by the taxing sovereignty, or both, it is undeniable that the state of domicile is not deprived, by the taxpayer's activities elsewhere, of its constitutional jurisdiction to tax, and consequently that there are many circumstances in which more than one state may have jurisdiction to impose a tax and measure it by some or all of the taxpayer's intangibles. Shares of corporate stock may be taxed at the domicile of the shareholder and also at that of the corporation which the taxing state has created and controls; and income may be taxed both by the state where it is earned and by the state of the recipient's domicile. Protection, benefit, and power over the subject matter are not confined to either state. The taxpayer who is domiciled in one state but carries on business in another is subject to a tax there measured by the value of the intangibles used in his business. [Citing cases.] But taxation of a corporation by a state where it does business measured by the value of the intangibles used in its business there, does not preclude the state of incorporation from imposing a tax measured by all its intangibles. Cream of Wheat Co. v. County of Grand Forks, supra, 253 U.S. [325] 329, 40 S.Ct. [558] 559, 64 L.Ed. 931; see Fidelity & Columbia Trust Co. v. [City of] Louisville,

245 U.S. 54, 38 S.Ct. 40, 62 L.Ed. 145, L.R.A.1918C, 124.'

Thus it appears that an intangible may be taxed at the domicile of the owner or at the commercial domicile of a corporation where the intangible is employed or used.

"In the case of Wheeling Steel Corporation v. Fox, 298 U.S. 193, 56 S.Ct. 773, 778, 80 L.Ed. 1143, the intangibles there involved were accounts receivable arising both from business done at the Wheeling, West Virginia, plant and accounts receivable arising from goods manufactured and sold at plants in other states, but all of which were held at Wheeling for collection. An ad valorem tax was levied upon these intangibles. In an opinion written by Mr. Chief Justice Hughes, it was held that these intangibles were subject to the ad valorem tax. As in the instant case, the corporation was a Delaware corporation but had its commercial domicile or chief place of business at Wheeling, West Virginia. With respect to the establishment of a commercial domicile, the Court stated as follows:

"'The corporation established in West Virginia what has aptly been termed a "commercial domicile." It maintains its general business offices at Wheeling and there it keeps its books and accounting records. There its directors hold their meetings and its officers conduct the affairs of the corporation. There, as appellant's counsel well says, "the management functioned." The corporation has manufacturing plants and sales offices in other states. But what is done at those plants and offices is determined and controlled from the center of authority at Wheeling. The corporation has made that the actual seat of its corporate government.'

"In the instant case the facts are substantially as set out hereinabove with respect to the commercial domicile of the Wheeling Steel Corporation. The general business office of the appellant is maintained at Andalusia, Alabama; it is there that the management functions. The corporation has manufacturing plants in Florida but what it does from those plants is controlled from the center of authority at Andalusia. The trucks of the corporation are based at Andalusia and are there given their instructions and Andalusia is the home base of the airplane. The books of the corporation are kept there and all the goods are sold from the Andalusia office and all of the accounts receivable come to that office for collection. These facts establish the fact that the appellant's commercial domicile is at Andalusia, Alabama.

"The items of property and the value thereof as fixed and determined by appellee and the franchise tax assessed thereon were as follows:

"1. Total average monthly Alabama expense (In lieu of cash)................................................ $ 186,461.41
2. Notes and accounts receivable.................................... 514,802.91
3. Inventories............................................................. 3,746,562.88
4. Investments in governmental obligations........................ NONE
5. Other investments (Foreign Corporation Stock)............................ 8,850.00
6. (a) Buildings—Machinery—Equipment........................ 710,423.95
7. (c) Land............................................................. 10,690.80
(Cash value life insurance)............................ 8,014.60
8. Other assets......................................................... 67,497.60
Capital employed in Alabama.................................... $5,253,304.15
Rate 2
Amount of tax 10,506.61
Tax paid 3,422.95
Balance due $ 7,083.66

"The bill of complaint alleges as follows:

" 'Appellant admits and alleges that the value of the separate items of its property which were treated by Appellee as being located or having a legal situs in Alabama and the aggregate value of same (other than cash and consisting of items 2 through 7, inclusive) were and are as determined by Appellee. * * *' "

"Item 1 above (Total average monthly Alabama expense) $186,461.41, was determined by the Department of Revenue as follows:

"1. Alabama wages—on bi-weekly basis............................. $114,207.56
2. Florida wages—on bi-weekly basis............................... 21,631.30
$135,838.86
3. Total salaries (everywhere) paid monthly......................... 211,601.62
4. Total rent paid (monthly basis).................................. 16,537.12
5. Florida part of annual rent...................................... 4,999.92
6. Total 'other expense' (everywhere)............................... 736,378.75
7. Florida 'other expense'.......................................... 58,784.20

From these figures we have developed the total average
Alabama expense to be as follows:

Item 3 ÷ 12 (months) = $17,633.46 – 15.92 per cent
(which represents the ratio that Florida's bi-weekly
wages bear to total bi-weekly wages)=

$17,633.46 – 2,807.25 = $14,826.21 plus item 1,
$11,537.20 ÷ 12 = $961.43
$114,207.56 – $129,033.77
Sec. A–1 (a)
Item #4 (total rent less Item #5 ($4,999.92)
(Fla. part)
(Sec. A–1 (b)
Item #6 (Total 'other expense') less Item #7 ($58,784.20 –
Florida ('other expense') = $677,594.55 ÷ 12 = $56,466.21
Sec. A–1 (c)

Recap. —
Sec. A–1 (a) — $129,033.77
Sec. A–1 (b) — 961.43
Sec. A–1 (c) — 56,466.21

Total Alabama average expense.....................................$186,461.41

"It is alleged in the bill of complaint: '* * * that the Alabama wages on a bi-weekly basis were the sum of to-wit, $114,207.56; that the Florida wages on a bi-weekly basis were the sum of to-wit, $21,631.30; that the total salaries (everywhere) paid monthly were the sum of to-wit, $211,601.62; that the total rent paid on a monthly basis was to-wit, $16,537.12; that the Florida part of the annual rent was the sum of to-wit, $4,999.92; that the total "other expense" (everywhere) was the sum of to-wit, $736,378.75 and that the total Florida "other expense" was the sum of to-wit, $58,784.20.' Then the first question that arises with respect to the intangibles is in regard to the $186,461.41.

"Alabama Average Expense—$186,461.41.

"The items making up the above total of $186,461.41 consist of the following: $114,207.56—bi-weekly wages. However, the salaries paid to the officers were not broken down into Alabama wages and Florida wages but were furnished to the Department as being a total of $211,601.62. Dividing said amount by 12 gives a sum of

$17,633.46 salaries paid per month everywhere. Now, in order to allocate that part of the salaries that was paid to officers in Florida, the Department took as the Florida part thereof the ratio that the Florida bi-weekly wages bear to the total bi-weekly wages of 15.92 per cent. 15.92 per cent of the said amount of $17,633.46 equals $2,-807.25 of salaries paid to the Florida officers and which amount deducted from the above amount of $17,633.46 leaves a balance of $14,826.21. This latter amount added to the $114,207.56, the amount of Alabama bi-weekly wages, gives a total of wages and salaries of $129,033.77 as the amount of money necessary for the corporation to have had on hand to meet said expense on January 1, 1952, the law day of the tax.

"Item 4 is total monthly rent paid of $16,537.12 of which amount the rent paid in Florida was $4,999.92, leaving a balance of Alabama annual rent of $11,537.20 which amount divided by 12 months gives an average of $961.43 of rent paid per month and which amount represents cash which the corporation would have had to have had on hand on said law day in order to meet that particular obligation.

"Item 6 represents total 'other expense' everywhere and Item 7 represents Florida expenses so that deducting the latter from the former gives Alabama 'other expense' of $677,594.55 which amount divided by 12 months gives $56,466.21 of Alabama monthly 'other expense' and which amount represents the amount of money which the corporation must have had on hand on January 1, 1952, and, adding these three items of $129,033.72 and $961.43 and $56,-466.21 gives $186,461.41 total Alabama average expense which the corporation must have had on hand or in bank or banks on the said date of January 1, 1952. The Court is of the opinion that the Department fairly estimated the amount that was necessary to be on hand or on deposit in banks to meet said expenses as of January 1, 1952, the law day of said tax and this conclusion is based largely upon the case of State v. Pullman-Standard Car Mfg. Co., 235 Ala. 493, 179 So. 541, 547, 117 A.L.R. 498. In said case the items making up a large part of the capital employed consisted of items of cash, accounts and notes receivable, inventories, and deferred charges. As the Court held that the plant which was owned by another corporation was not includible in the measure of the tax, it concluded that in addition to the items named, there should be included therein one-twelfth of the total annual rent paid, the Court in that regard, saying as follows:

"'A reasonable sum for such purpose should be included as capital employed. Perhaps one-twelfth of the total annual rent paid should be allocated to capital so employed: the balance being included in the monthly turn over. That would be approximately $25,000. We think that amount should be added to the total found by the circuit court as capital so employed. This adds $50 to the tax as adjudged by that court.'

"Insofar as the amount that is included in the $186,461.41 is concerned, the above quotation represents exactly what the Department did in this case, that is, took an average monthly rent which was $961.43 and included that in the measure of the tax.

"Certainly the corporation could not operate without capital to meet the bi-weekly and monthly pay rolls. In the Pullman-Standard Car Mfg. Co. case, supra, the Court, with respect to pay rolls there involved said as follows:

"'Monthly pay rolls also take money. If the rent payable is of the same nature as other operating expenses, such as pay rolls, it should have the same sort of treatment in determining the amount of capital employed.'

"Thus it appears that the Supreme Court has gone on record as approving the treatment of pay rolls just as the Court treated rent in that case. The Department was careful to eliminate all pay rolls that were payable to the wage-earners and officers in Florida where the amount thereof was not allocated by the taxpayer itself.

"This leaves for consideration only the 'other expense' of $56,466.21. This was undoubtedly the other monthly expense in Alabama and simple mathematics applied

to the figures as alleged in the bill clearly show the necessity for this additional capital if the corporation was to continue operation and this Court holds that the said sum of $186,461.41, the total of the items discussed above, was a reasonable sum to be included by the Department in the measure of the tax.

"By referring to the franchise tax return made by the appellant for the year 1952, there will be found under Section B(1)—Cash Everywhere—the sum of $217,043.45. While the appellant allocates only $62,133.-47 of that amount to Alabama, it is perfectly obvious that said amount was insufficient to meet the current expenses that were payable on January 1, 1952. The appellant undertakes to justify the allocation of only $62,133.47 to Alabama on the theory that $150,000 of the $217,043.47 was on deposit in a Chicago bank and not subject to check. It appears to the Court that said sum of money was attributable to business done in Alabama; that it was made from sale of garments manufactured in Alabama. The appellant was a going concern with admitted capital of over five million dollars and it just does not stand to reason that the appellant would not have had available on January 1, 1952 sufficient funds with which to meet the pay roll of its employees and officers and other expense, all due as of that particular date. Furthermore, bank accounts are intangible personal property and the commercial domicile of the corporation being at Andalusia, Alabama, it follows that the legal situs of the various bank accounts was Andalusia, Alabama. It also appears from the allegations of the bill that said $150,000 was, in some way, used in the nature of a security and the benefit flowing therefrom is certainly attributable to the business done in this State. The Court is, therefore of the opinion that the demurrer addressed to that aspect of the bill of complaint wherein the appellant seeks to avoid the franchise tax liability with respect to the said sum of $186,461.41 is well taken and should be sustained.

"$150,000—Not Subject To Check.

██ "From what the Court has said hereinabove, it is apparent that the Court is of the opinion that the appellant is not entitled to exclude from the measure of the tax the $150,000 on deposit in the Continental National Bank & Trust Company, Chicago, Illinois. That sum or some other sum was necessary to meet current expenses. Furthermore, the return made by the appellant to the Department of Revenue had attached thereto a financial statement in which it appears that $212,133.47 of the $217,043.45 was by the appellant allocated to Alabama and that there was allocated to Florida only the sum of $4,909.98. This financial statement was made up as of September 30, 1951, three months before the law day of the tax. It may, therefore, be reasonably assumed from the facts alleged in the bill, when aided by the exhibit attached thereto, that as of January 1, 1952 the appellant had ample funds with which to meet pay rolls, rent and other expenses and that, therefore, to reduce the said sum of $186,461.41 by the sum of $150,000 would be both illogical and unreasonable and the facts alleged do not show that appellant is entitled to such relief. The Court is, therefore, of the opinion and holds that the demurrer of the appellee to that aspect of the bill of complaint wherein the appellant seeks a deduction of the $150,000 from its cash and bank deposits is well taken and should be sustained.

"Accounts Receivable of $514,802.91.

██ "The allegations of the bill with respect to accounts receivable of $514,802.91 were that the appellant had treated as Alabama assets said accounts receivable and that it was impractical if not impossible to segregate the accounts receivable resulting from the sale of products manufactured in Florida from the accounts receivable resulting from the sale of products manufactured in Alabama; that the accounts receivable reflect that part of the manufacturing operations carried on in Florida, as well as that part of the manufacturing operations carried on in Alabama, which had been converted as of the law day into the form of accounts receivable, and the proceeds thereof would be further employed in appellant's business both in Florida and Alabama without segregation of amounts to either state. In the

opinion of the Court these allegations are insufficient to immunize any part of the accounts receivable from their inclusion in the measure of the tax. The return filed by the taxpayer and duly sworn to, allocated to Alabama all of said accounts receivable and the allegations of the bill also reflect that these accounts receivable arose from the sale of the finished product after it had been warehoused in Alabama and the accounts receivable were collectible by the corporation at its plant in Andalusia. It, therefore, appears that the goods sold resulting in these accounts receivable had a definite situs in Andalusia prior to their sale. Furthermore, the appellant could not by its own carelessness in keeping proper books and records immunize any part of the accounts receivable from the measure of the tax. In this connection see the Pullman-Standard Car Mfg. Co. case, supra, and State v. Southern Natural Gas Corp., 233 Ala. 81, 170 So. 178; Southern Natural Gas Corp. v. State, 301 U.S. 148, 57 S.Ct. 696, 698, 81 L.Ed. 970, and Wheeling Steel Corporation v. Fox, 298 U.S. 193, 56 S.Ct. 773, 778, 80 L.Ed. 1143 and State v. National Cash Credit Association, 224 Ala. 629, 141 So. 541. The Court is, therefore, of the opinion that the demurrer of the appellee to the phase of the bill wherein and whereby the appellant seeks to avoid the liability with respect to any part of the said sum of $541,802.91 is well taken and should be sustained.

### "Inventories of $3,746,562.88.

█ "While the appellant in its return allocated to the State of Alabama inventories of the value of $3,746,562.88, and although it alleges in the bill of complaint that said inventories were located on the law day in the warehouses in Alabama for final shipment to customers or for distribution to appellant's plants in Alabama and Florida in the normal course of the manufacturing processes conducted in both states, without segregation of amounts to either state, it alleges, in an effort to avoid tax liability with respect to the cloth, raw material and supplies which were kept on hand in Alabama warehouses, that these inventories were for manufacturing proc-

esses in Florida. This property being located in the warehouses in Alabama on the law day in question, and being constantly drawn from and used by the plants in Alabama, the Court is of the opinion that it is immaterial that part of it might ultimately find its way to the plant in Florida. Furthermore, the return shows that the total inventory in Alabama and Florida, there being no business conducted whatsoever in Delaware, the state of appellant's charter, was in the amount of $3,953,564.94. Deducting therefrom the amount allocated to Alabama of $3,746,562.88 leaves a balance of $209,002.06 of inventory which appellant allocated to Florida. The inventories in question having a situs in Alabama on the law day of the tax, and being principally used from by the plants in Alabama, the Court is of the opinion that the demurrer of the appellee to that phase of the bill which seeks to reduce the measure of the tax with respect to the inventories to an amount less than $3,746,562.88 is well taken and should be sustained.

### "Indebtedness of Appellant.

█ "Appellant contends that the current indebtedness of $3,409,488.17, consisting of current accounts payable, current demand notes, accrued current taxes, and accrued wages and salaries, should be deducted from the appellant's capital employed in determining the amount of franchise tax due by the appellant to the State. The Court cannot agree with this contention. Borrowed capital is nonetheless capital because it is borrowed. It goes into and becomes a part of the operating capital of the corporation, and there is no provision in either § 232 of the Constitution of Alabama of 1901 or in § 348, Title 51, Code of Alabama 1940 (which implements the constitutional provision and levies the franchise tax) for a deduction or an exemption for borrowed capital. Furthermore, a case of similar import was before the Supreme Court in the case of Ellis v. W. A. Handley Mfg. Co., 214 Ala. 539, 108 So. 343, wherein it was held that the total value of a foreign corporation's property employed in this State, without deduction of mortgage indebtedness, is a proper basis for franchise

tax. The Court, speaking through Mr. Chief Justice Anderson, remarked:

" 'Now in ascertaining the sum that might be leviable on property listed and employed in the business of this appellee, we know of no law providing for or authorizing a deduction for incumbrances. In other words, the value of the plant, regardless of the mortgage on same, should be assessed for purposes of direct taxation, and, while this is a franchise and not a direct tax, the value fixed on the property employed can, and should be, taken as a basis for fixing the franchise tax.

" 'Our law does not say capital owned or invested, but "capital employed," and it is admitted that the plant is employed in the business of the corporation. Moreover notwithstanding the mortgage, this appellee is the owner of the plant as against everyone except the mortgagee. Turner [Coal] Co. v. Glover, 101 Ala. [289] 290, 13 So. 478.' "

"It will be observed that the Court did not state whether or not the mortgage debt was a so-called 'long term debt' or a so-called 'short term debt', such differentiation evidently being considered by the Court as immaterial.

"In the case of State v. Banana Selling Co., Inc., 185 La. 668, 170 So. 30, 31, 107 A.L.R. 1298, the corporation was organized with a capital stock of only $5,000. However, it purchased bananas from the Fruit Dispatch Company and at the end of the year 1932 there was due by the corporation to the Fruit Dispatch Company $330,243.29, which was long past due, for bananas purchased from said Company and sold long before the end of 1932 and that same situation obtained for subsequent years, 1933 and 1934. The Court, under these circumstances, held that the amount owing by the taxpayer was not only not deductible but also includable in the measure of the tax. The Court stated:

" 'Defendant company has a capital stock of only $5,000, which has not been increased since its incorporation in January, 1925. Instead of operating through further contributions from its stockholders, it has used, as its capital, the money due by it to Fruit Dispatch Company.

" 'To permit defendant company to operate as a corporation and enjoy corporate privileges derived from the state, by paying a tax on only $5,000 of capital stock, when it has operated since 1932 on large sums of money contributed through merchandise furnished by the Fruit Dispatch Company, would defeat the purpose of the law in taxing borrowed capital.

" 'The contention of defendant company that the retention of money due by it to its creditor and its use in the corporate business is not borrowing capital is, in our opinion, illogical and unsound.

" ' "Capital" is defined as "That portion of the assets of a corporation, regardless of their source, which is utilized for the conduct of the corporate business and for the purpose of deriving therefrom gains and profits. 7 R.C.L. [p.] 196." Ballentine's Law Dictionary.

" 'Our conclusion is that the price of the bananas due by defendant company to its vendor, which it retained and used in its business, is borrowed capital, without which it could not have continued its activities. * * *

* * * * * *
" 'It is true that the corporation franchise tax statutes of the state do not define "borrowed capital." But it is also true that courts will look at the substance of things, and will decide cases according to the ultimate facts found.' "

"To similar effect, see Southern Realty Corporation v. McCallum, 5 Cir., 65 F.2d 934, writ of certiorari to the Supreme Court denied Southern Realty Corp. v. Heath, 290 U.S. 692, 54 S.Ct. 127, 78 L. Ed. 596; State v. Xeter Realty, 182 La.

414, 162 So. 29; State ex rel. Marquette Hotel Inv. Co. v. State Tax Commission, 282 Mo. 213, 221 S.W. 721, 723.

"In the latter case, the Missouri Court remarked:

" 'The money so borrowed, or the property purchased with that money, would be assets of the corporation. The corporation would have the right to use, and actually would be using, under its franchise, not only the amount of its outstanding capital stock, but all of the money so borrowed. This it has a right to do, and it is that right which the General Assembly intended to tax by the enactment of the statute here in question.' "

"The Court is, therefore, of the opinion that the demurrer of the appellee to that phase of the bill of complaint which seeks a deduction or exemption of the indebtedness of $3,409,488.17 from the measure of the tax is well taken and should be sustained.

"Mortgage from Vernon Bell.

. "The appellant, in its bill of complaint, alleges that the mortgage executed by Vernon Bell to the appellant was on property located in Andalusia, Alabama, but did not allege whether the property conveyed thereby was personal property or real estate. Hence, the allegations of the bill of complaint are insufficient to bring said mortgage within the only exemption provided for by Section 348, Title 51, Code of Alabama 1940. The exemption referred to in said Section reads as follows:

" 'In ascertaining the annual franchise tax which will be paid by any foreign corporation doing business in this state under this section there shall be deducted from the amount of the capital employed by such corporation in this state the aggregate amount of loans of money made by such corporation in this state and which shall be secured by existing mortgage or mortgages to it on real estate in this state and upon which mortgage or mortgages there shall have been paid the recording privilege tax provided by law.' "

"Hence, it is apparent that in order for said loan made by said appellant to the said Vernon Bell to come within said exemption, the loan must have been secured by mortgage on real estate in this State and upon which said mortgage there shall have been paid the recording privilege tax provided by law. Such allegations are wholly absent from the bill. The Court is, therefore, of the opinion that the demurrer of the appellee to that phase of the bill of complaint is well taken and should be sustained.

"Shares of Stock.

"It is alleged in the bill of complaint that the appellant owns shares of stock in Andalusia Brick & Tile Company, a defunct Delaware corporation formerly operating in Andalusia, Alabama, and that it had stock in said Corporation of a value of $8,600. It was admitted by the appellant on the bottom of Page 4 of the bill of complaint that 'the value of the separate items of its property which were treated by Appellee as being located or having a legal situs in Alabama and the aggregate value of same * * * are as determined by Appellee as stated above. Item 5 in the property stated above is 'Other investments (Foreign Corp. Stock)—$8,850.00.' That is not an exact, accurate statement for under said Item 5, according to the allegations of the bill, there was included the Vernon Bell mortgage and the shares of stock in the Andalusia Brick & Tile Company, the former being valued at $250 and the latter at $8,600. The shares of stock of a foreign corporation owned by a foreign corporation whose commercial domicile is in Alabama, as is the case with the instant corporation, and the situs of the shares of stock presumably being in Alabama, there being no allegations in the bill to the contrary, are includable in the measure of the franchise tax of the corporation so owning said shares of stock. State v. Kidd, 125 Ala. 413, 28 So. 480; Kidd v. State of Alabama, 188 U.S. 730, 23 S.Ct. 401, 47 L.Ed. 669; State Tax Commission of Utah v.

Aldrich, 316 U.S. 174, 62 S.Ct. 1008, 1011, 1012, 86 L.Ed. 1358; Arkansas Fuel Oil Corporation v. Fontenot, 225 La. 166, 72 So.2d 465; People ex rel. Tobacco & Allied Stocks v. Graves, 250 App.Div. 149, 294 N.Y.S. 995, affirmed without opinion 277 N.Y. 723, 14 N.E.2d 821.

"In the Aldrich case, supra [316 U.S. 174, 62 S.Ct. 1012], the Supreme Court of the United States held that jurisdiction to tax was not restricted to the domiciliary state and stated as follows:

"'In case of shares of stock "jurisdiction to tax" is not restricted to the domiciliary State. Another State which has extended benefits or protection or which can demonstrate "the practical fact of its power" or sovereignty as respects the shares (Blackstone v. Miller, 188 U.S. [189, at] page 205, 23 S.Ct. [277, at] page 278, 47 L.Ed. 439) may likewise constitutionally make its exaction. In other words, we restore these intangibles to the constitutional status which they occupied up to a few years ago.'"

 "Certainly the State of Alabama had extended both to the issuing corporation and to the holder of the shares of stock protection in many respects. While the issuing corporation was a Delaware corporation, presumably it had no place of business except Andalusia, Alabama. The allegations of the bill of complaint are, on demurrer, construed most strongly against the pleader. It is presumed that he has stated the best case of which the facts at his command are capable. The Court is, therefore, of the opinion that the demurrer of the appellee to that phase of the bill of complaint with respect to the shares of stock of said Andalusia Brick & Tile Company is well taken and should be sustained.

"Capital Assets—$721,114.75.

 "In the franchise tax return filed by the appellant, Page 2, Section B, Item 6(a) and (c), capital assets to the amount of $721,114.75 are allocated by the appellant to the State of Alabama. Said amount of $721,114.75 is the aggregate of buildings, machinery and equipment in the amount of $710,423.95 and land of the value of $10,690.80, making total, as stated, of $721,114.-75. The Court understands that no question is raised by the appellant with respect to the correctness of the inclusion of these values in the measure of the tax. However, the appellant does allege that the trucks and transportation equipment aggregating $51,852.66 and included in item of $721,144.75 and located in Alabama are used for the operation of appellant's business in Alabama and Florida. In the first place, it appears that appellant is mistaken with respect to the trucks and transportation equipment being included in the $721,114.75 at the figure of $51,852.66 for the return filed by the appellant, Page 2, Section A. Item 6(a)—Auto and Trucks under Column 4—shows that only $19,930.64 was included for trucks and transportation equipment. The appellant allocates that value of these trucks to the State of Alabama and, of course, it would not be done if they were not based in this State. Like any other tangible personal property, they are subject to taxation at their situs, and the fact that they are used in both Alabama and Florida by the appellant does not militate against the inclusion of their value in the measure of the franchise tax. The Court is, therefore, of the opinion that the appellee correctly included in the measure of the tax the said sum of $721,114.75 and that the demurrer interposed to that aspect of the bill of complaint is well taken and should be sustained.

"Cash Value of Life Insurance.

 "The allegations of the bill are that the cash value of this life insurance was in the amount of $8,014.60 and that the policies insured the lives of its key executives but are held by appellant. From this we understand that the appellant is the beneficiary in said policies and that it pays the premiums, etc. Appellant sets up as a defense against the inclusion of the cash surrender value of these policies in the measure of the Alabama franchise tax that they were held by Security National Bank, Greensboro, North Carolina, as additional security for a bond issue of $527,500 which is also secured by a mortgage conveying all

the capital assets of the appellant in Alabama and Florida and that the proceeds were used in the operation of appellant's business in both Alabama and Florida. The fact that the policies in question are used to secure a loan tends to show employment or use thereof and that the proceeds of the loan are used in this State is admitted by the appellant. The fact that some of the proceeds might be used in Florida when the commercial domicile or business situs of the corporation is Andalusia, Alabama, does not, in the opinion of the Court, militate against their inclusion in the measure of the tax. Furthermore, we must keep in mind that we are dealing here with an intangible and that an intangible for tax purposes may have at least two situses, one in the domiciliary state and one in the state where the corporation has established a commercial domicile. Curry v. McCanless, 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339; State Tax Commission of Utah v. Aldrich, 316 U.S. 174, 62 S.Ct. 1008, 86 L.Ed. 1358. Furthermore, we are not here dealing with an ad valorem tax but an excise tax which our Supreme Court has been careful to point out is not a direct tax on the property but a tax on the right or privilege of the corporation to engage in business in this State in its corporate name. In the case of State v. Southern Natural Gas Corp., 233 Ala. 81, 170 So. 178, 190; Southern Natural Gas Corp. v. State, 301 U.S. 148, 57 S.Ct. 696, 81 L.Ed. 970, the Supreme Court of Alabama, after referring to and quoting approvingly from the case of Wheeling Steel Corporation v. Fox, 298 U.S. 193, 56 S.Ct. 773, 80 L.Ed. 1143, to the effect that although the corporation was a Delaware corporation it had all its operations from a commercial domicile in Wheeling, West Virginia, and that consequently all the accounts receivable were subject to an ad valorem tax in Wheeling, said and held as follows:

" 'The court then held that the bank accounts and accounts receivable located outside the state were taxable in West Virginia.

" 'While the tax there in question was an ad valorem tax, the basis of the decision was that the home office in reality was in West Virginia.

" 'While counsel for appellee argued that whatever is done in Alabama is incidental to transportation of natural gas in interstate commerce from points without the state, we hold that the franchise tax here exacted and being considered is not on any basis a tax on business or a burden on the corporation's interstate commerce, but is laid on the exercise of corporate functions or on the privilege of exercising corporate functions, within the state and its employment of its capital in Alabama, domiciled at its office in Birmingham within this state. The control of the business in all of its aspects was in Birmingham, as shown by the statement of facts.' "

"The Court is, therefore, of the opinion that the demurrer interposed to this aspect of the bill of complaint is well taken and should be sustained.

"Other Assets Aggregating $67,497.60.

"The appellant alleges in its bill of complaint that the item of other assets of $67,497.60 is made up of prepaid expenses, that is, amounts paid out by appellant for the following expense items which have future operating value:

"Prepaid taxes—Alabama.................................................. $ 962.68
Florida .......................................................... 932.77
Prepaid fire, theft, property liability
 and damage insurance..................................... 54,252.16
Office group insurance—Officer's life............................. 2,700.38
Officers and supervisory......................................... 4,439.54
Deferred Bond Issue Expense...................................... 3,210.07
Deposit for purchase of airplane.................................. 1,000.00"

■ "These items are each obviously intangible personal property. We have heretofore discussed to a considerable extent intangible property and here make reference thereto. The prepaid taxes in Alabama of $962.68 are on property the situs of which is in this State and hence, the money to the extent of the amount alleged for prepaid taxes is, in the opinion of the Court, includable in the measure of the tax. Certainly the payment of taxes has a direct relationship to the ownership and use of property. Attention is also called to the fact that the appellant allocated said tax to Alabama in its franchise tax return. See Page 2 of the return, Section B, Item 7.

■ "The next item under other assets is prepaid taxes in Florida of $932.77. While it might have been more appropriate to have allocated that to Florida, the taxpayer in its sworn return, as hereinabove stated, same being a part of the bill of complaint by reference, saw fit to allocate said prepaid taxes to Alabama. As the rate of tax is only $2.00 per thousand, it is apparent that the tax would only be $1.86. The Court feels that the maxim *de minimis non curat lex*—the law does not care for, or take notice of very small or trifling matters—should here apply.

■ "The next item of prepaid fire, theft, property liability and damage insurance of $54,252.16 is likewise an intangible and said amount of money is invested, used or employed by the appellant in the protection of its property from fire or theft and to secure itself against property liability and damage. It, therefore, has a direct relationship to the property affected, and in the opinion of the Court, the fact that the prepaid insurance made up of blanket policies covering employees conducting operations for the plants in Alabama and Florida and blanket policies on inventories and property and equipment in Alabama and Florida does not militate against the inclusion thereof in the measure of the tax. Such items are intangibles and since the situs of them could not be and is not in Delaware, the appellant doing no business there, the facts alleged do not militate against the inclusion thereof in the measure of the franchise tax. The corporation has definitely established in Alabama a commercial domicile and no doubt the policies in question are all actually held by the corporation at its plant in Andalusia, Alabama, so that they have not only a legal situs in Andalusia but an actual situs. The Court is, therefore, of the opinion that said item of $54,252.16 is properly includable in the measure of the tax.

■ "The next item of office group insurance—officers' life—$2,700.38 is likewise intangible personal property and the legal if not the actual situs of it is Andalusia, Alabama. It is certain that the capital of the corporation to the extent there expressed is employed in this State as are the other insurance policies. The Court is, therefore, of the opinion that same is properly includable in the measure of the tax.

"The next item is that of office group insurance—officers and supervisory—$4,439.54. What has been said hereinabove with respect to the foregoing items applies with equal force to this particular item. It is, therefore, the opinion of the Court that said amount is properly includable in the measure of the tax.

■ "The next item of deferred bond issue expense—$3,210.07—certainly has direct relationship to the carrying on of the business of the corporation in Alabama and the fact that some of the money obtained as a result of the bond issue was used in Florida, does not militate against the inclusion thereof in the measure of the tax.

■ "The next item included under other assets is the deposit for purchase of airplane—$1,000. The allegation with respect to this item is that the airplane is used in the operation of the plants in Florida and Alabama although the hangar and its home station is in Alabama. From this allegation it is presumed that the airplane has actually been delivered and same is in use although only $1,000 has been paid thereon. With this construction upon the allegations of the bill, the conclusion is inescapable that the situs of the airplane is

Andalusia, Alabama. The Court is, therefore, of the opinion that the appellant correctly allocated same to the State of Alabama and that the Department correctly included same in the measure of the tax. Hence, the demurrer interposed by the appellee to this phase of the bill of complaint is well taken and should be sustained.

"Section 232 of the Constitution of Alabama 1901; Section 348, Title 51, Code of Alabama 1940

 "Appellant insists and alleges that appellee, in fixing the actual amount of capital employed by appellant in Alabama on the basis of the aggregate value of the separate items of property owned by appellant and located in Alabama or considered as having a legal situs in Alabama, violated Section 232 of the Constitution of Alabama 1901 and also Section 348, Title 51, Code of 1940, which measures the franchise tax imposed on foreign corporations by the actual amount of capital employed in Alabama and not by the fair market value of the capital employed.

"The Court cannot agree with such contention. While it is quite possible that the appellee, in assessing the franchise tax against the appellant, should have taken into consideration the over-all value of the plants located in Alabama, together with all the property incident thereto but, in doing so, the Court is of the opinion that the Department would have come up with a value of the plants as a going concern in excess of the value placed thereon by it. In other words, the Department of Revenue determined that the value of the property located in Alabama or having a legal situs here was of the value of $5,253,304.15. In arriving at this value no consideration whatsoever was apparently given to the fact that the appellant shows that the good will of the corporation was of the value of $135,000. Page 2 of the appellant's return, Section B, Item 6, Capital Assets—Good Will—$135,000. Good will was held to be intangible property and includable in the measure of the tax in the following cases and authorities: People ex rel. A. J. Johnson Co. v. Roberts, 159 N.Y. 70, 53 N.E. 685,

45 L.R.A. 126; 84 C.J.S., Taxation, § 194, p. 372 (which held that good will is includable in the measure of the tax as part of the capital of the corporation); 51 Am. Jur., Sections 865–867, pages 772–774.

"Certainly, a going concern is more valuable than one that is not in operation or has been dissolved or is in bankruptcy which is but to say that the unitary system, although it be confined entirely to the State of Alabama, has a greater value than its separate parts. Commonwealth v. Columbia Gas & Elec. Corp., 336 Pa. 209, 8 A.2d 404, 131 A.L.R. 933, 935 and Annotation thereto; Southern R. Co. v. Greene, 160 Ala. 396, 49 So. 404, 407; Kansas City, Memphis & Birmingham R. Co. v. Stiles, 192 Ala. 687, 68 So. 1018, affirmed by the Supreme Court of the United States 242 U.S. 111, 37 S.Ct. 58, 61 L.Ed. 176. Furthermore, in the case of State v. Travelers Ins. Co., 256 Ala. 61, 53 So.2d 745, 749, the Supreme Court of this State in the last case before it dealing with franchise tax, stated that certain items are to be included in the measure of the tax. We quote:

"'On the basis of the foregoing interpretation, the court has held that the following items are to be included in the computation of the actual amount of capital employed: * * *.'"

Then the Court sets out various items which have heretofore been held to be includable in the measure of the tax such as the value of the plant, property employed in the office, nitrate of soda, the sum represented by one-half (one-twelfth) of the total annal rent for buildings, bills receivable which arose from the corporation's Alabama operations; real estate, plant and equipment used by taxpayer and sums expended in erecting the plant. Then the Court further remarked:

"'While admittedly these decisions have not set up a complete index to all items which are to be included as actual amount of capital employed in Alabama, the holdings do present a pattern which indicates that the governing principle of law is to the effect that all assets which have at least a legal situs in Ala-

bama, which are used in Alabama by the foreign corporation in the exercise of its corporate functions, are to be considered as the determining factor.'"

 "It appears that the appellant also questions the use by the Department of Revenue of the fair and reasonable market value in determining the measuring rod to be applied in determining the franchise tax. The Supreme Court put that contention to rest in the case of State v. Jackson Securities & Investment Co., 243 Ala. 83, 8 So.2d 573, 574, wherein Justice Livingston, now Chief Justice, held that the reasonable and fair market value of the assets of the corporation should be included in the measure of the tax. He stated as follows:

"'Under the Constitution, statutes and former decisions of this Court, it is manifest that the fair and reasonable market value, as distinguished from the original purchase price of the property, as here contended by the State, must form the basis for the imposition of the foreign corporation franchise tax. * * *'

"The Court is, therefore, of the opinion that the demurrer interposed to the above two phases of the bill of complaint is well taken and should be sustained."

As stated supra, the decree sustained the demurrers to the bill as a whole and to each aspect of the bill.

The appellant agrees in brief that the demurrers to that aspect which sought to make Joe M. Edwards, as Commissioner of Revenue, and the State Department of Revenue parties to the suit were properly sustained.

On an appeal by the taxpayer from an assessment made and entered by the Department of Revenue, as here, the assessment is prima facie correct and the burden is on the taxpayer to show that the total sum of employed capital, the basis on which the tax is computed, is erroneous. Code of 1940, Title 51, § 140; State v. Pullman-Standard Car Mfg. Co., 235 Ala. 493, 179 So. 541, 117 A.L.R. 498. Taking the allega-

tions of the bill as true, "but construing them most strongly against the pleader, as must be done on demurrer, we are not of opinion that they meet and overcome the prima facie statutory presumption of the legality and correctness of the assessment and, therefore, the circuit court did not err in sustaining the demurrer[s]." Paramount-Richards Theatres v. State, 252 Ala. 54, 39 So.2d 380, 384.

Affirmed.

LAWSON, SIMPSON, STAKELY and GOODWYN, JJ., concur.